A01A2308. HCP III WOODSTOCK, INC. et al. v. HEALTHCARE SERVICES GROUP, INC. et al.

(562 SE2d 225)

JOHNSON, Presiding Judge.

HCP III Woodstock, Inc. d/b/a Meadowbrook Manor of Woodstock, its insurer, and several nursing home residents (collectively Meadowbrook) appeal the trial court's grant of summary judgment to defendant Healthcare Services Group, Inc. (Healthcare) in this subrogation action for negligence and breach of contract for property damage caused by a fire at Meadowbrook Manor nursing home. The only issue before us in this appeal is whether a statement given by one of Healthcare's employees to an insurance adjuster is admissible evidence which establishes a jury issue concerning Meadowbrook's negligence and breach of contract claims. We hold that the statement is inadmissible and therefore affirm the judgment of the trial court.

Summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[1] The standards applicable to motions for summary

---

[11] (Punctuation omitted.) *Southeastern Security Ins. Co. v. Hotle*, 222 Ga. App. 161, 164 (1) (e) (473 SE2d 256) (1996).

[1] OCGA § 9-11-56 (c).

judgment are announced in *Lau's Corp. v. Haskins*.[2] When ruling on a motion for summary judgment, the party opposing the motion should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion.[3] When reviewing the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence.[4]

The record reveals that at approximately 2:30 a.m. on December 3, 1993, there was a fire at Meadowbrook Manor nursing home. Although the exact cause of the fire is disputed, the evidence shows that the fire originated in the laundry room in or near one of the two clothes dryers. Healthcare was contractually obligated to provide housekeeping and laundry services for Meadowbrook, though none of its employees were working in the laundry room at the time of the fire. A Meadowbrook nursing assistant was the last person to use the clothes dryers prior to the fire.

Meadowbrook filed suit in May 1996 for negligence, breach of contract, and breach of warranty[5] naming as defendants Healthcare (the dryers' owner), Southeastern Laundry Equipment Sales, Inc. (the dryers' installer), Emerson Electric Company (the dryers' motor manufacturer), and American Dryer, Inc. (the manufacturer of one of the dryers). The complaint alleged that while Healthcare had notice of abnormalities with the dryers which could indicate a fire risk, it nonetheless failed to correct the problem. And, as a result of its failure, the fire occurred.

Healthcare moved for summary judgment asserting that there was no admissible evidence that it had notice of the potential fire hazard with regard to one of the dryers. In response to Healthcare's motion, Meadowbrook presented evidence purportedly indicating that Healthcare had notice of the potential fire hazard posed by one of the dryers and that Healthcare breached its implied duty under the service contract. Specifically, Meadowbrook pointed to an insurance adjuster's summary of a statement made by Brian Wakefield, a Healthcare employee who worked in the nursing home laundry room. The summary was attached to the deposition of the insurance adjuster, Douglas White, who was hired to adjust the loss on behalf of Federated Insurance, Healthcare's property insurer. According to

---

[2] 261 Ga. 491 (405 SE2d 474) (1991).

[3] *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843) (1988).

[4] *Desai v. Silver Dollar City*, 229 Ga. App. 160, 163 (1) (493 SE2d 540) (1997).

[5] In December 2000, Meadowbrook voluntarily dismissed the breach of warranty claim against Healthcare and dismissed its claims against Emerson Electric Company and American Dryer, Inc.

the adjuster's summary, Wakefield told him that when the problem dryer would not start, a small flame would shoot out of the back of the dryer. Wakefield also told the adjuster that the problem with the dryer was reported to the laundry room supervisor who then called to have the dryer serviced.

The trial court granted Healthcare's motion, finding that there was no evidence of breach of contract or negligence by Healthcare. The court held that there was no evidence of a breach of duty by Healthcare because the statement allegedly made by Wakefield, which was the only evidence put forward to show notice of a potential fire hazard, was inadmissible hearsay. We agree that the statement was not admissible.

In its sole enumeration of error, Meadowbrook contends that the trial court erred in finding that the statement by the Healthcare employee was inadmissible hearsay. According to Meadowbrook, the statement was the admission of a party opponent and therefore admissible under OCGA § 24-3-31.[6]

> [A] movant for summary judgment who will not have the burden of proof at trial need not conclusively disprove the non-moving party's case. Instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.[7]

Evidence offered on motion for summary judgment is held to the same standards of admissibility as evidence at trial, and evidence inadmissible at trial is generally inadmissible on motion for summary judgment.[8] Hearsay is not admissible and is without probative value unless it comes within a recognized exception to this rule.[9]

Although Meadowbrook contends that the summary of Wakefield's statement is admissible under OCGA § 24-3-31, admissions by

---

[6] OCGA § 24-3-31 provides that the admission by a party to the record shall be admissible in evidence when offered by the other side, except in the following cases:
(1) Admissions of a mere nominal party or naked trustee; (2) Admissions of one of several parties with no joint interest, unless the issue is of such a character that the effect of the admission can be confined to the one party alone; (3) Admissions of a trustee before he is clothed with the trust; [and] (4) Admissions of defendants in execution in claim cases, after the pendency of litigation.

[7] (Citation and punctuation omitted.) *Harrison v. Golden*, 219 Ga. App. 772, 774 (2) (a) (466 SE2d 890) (1996).

[8] *Hall v. Cracker Barrel &c.*, 223 Ga. App. 88, 92 (476 SE2d 789) (1996).

[9] *Barich v. Cracker Barrel &c.*, 244 Ga. App. 550, 551 (1) (536 SE2d 221) (2000).

persons not a party to an action are admissible in evidence only where the party making the admission is the real party in interest, although not a party to the record, or where a party to the record refers another to such third party for information, or where there is an admission by a third person against his interest as to a fact collateral to the main issue between the litigants but essential to the adjudication of the cause.[10]

Meadowbrook does not argue that Wakefield's statement falls within one of these exceptions. Instead, it asserts that because Healthcare is a party to the lawsuit, Wakefield, because of his status as Healthcare's employee, is a party to the record. Therefore, it maintains, Wakefield's statement is an admission of a party to the record.

While the record does reflect that Wakefield was employed by Healthcare as a laundry room worker at Meadowbrook Manor, he was but a mere employee. And, as a "mere employee [he has] no authority to bind [Healthcare] by his statement."[11] While an extrajudicial statement by an employee can be introduced in evidence for the purpose of charging the employer with the plaintiff's damage if the statement is made as a part of the res gestae,[12] Meadowbrook does not argue that the statement was made as part of the res gestae of the underlying controversy.

Meadowbrook also contends that White, the insurance adjuster, was Healthcare's agent at the time he took Wakefield's statement. It does not, however, offer any argument as to the relevance of this assertion but simply posits *Mulherin v. Globe Oil Co.*[13] as authority for its contention. In that case, however, this court found that the out-of-court statement made by an agent of the defendant corporation concerning a defamatory letter was part of the res gestae of the transaction in controversy.[14] Even assuming, without deciding, that White, in his capacity as an independent adjuster for the claim, was Healthcare's agent, the statement was not made by him, but rather to him. Furthermore, OCGA § 24-3-33 states: "Admissions by an agent or attorney in fact, during the existence and in pursuance of his agency, shall be admissible against the principal." And, under OCGA § 10-6-64: "The agent shall be a competent witness either for or against his principal. His interest shall go to his credit. The declarations of the agent as to the business transacted by him shall not be admissible against his principal unless they were a part of the negotiation constituting the res gestae, or else the agent is dead." The

---

[10] *Cobb v. Garner*, 158 Ga. App. 110, 112 (3) (279 SE2d 280) (1981).
[11] *Sutton v. Winn Dixie Stores*, 233 Ga. App. 424, 426 (504 SE2d 245) (1998).
[12] *A. K. Adams & Co. v. Homeyer*, 87 Ga. App. 301 (73 SE2d 581) (1952).
[13] 173 Ga. App. 790 (328 SE2d 406) (1985) (physical precedent only).
[14] See id.

Code sections are construed together with the second effectively limiting the scope of the first.[15]

While Meadowbrook asserts that White was Healthcare's agent, again it does not argue that the statement is part of the res gestae of the controversy. Under OCGA § 24-3-3, "[d]eclarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae." To fall within the res gestae, a statement must be contemporaneous with the main fact, but need not be precisely concurrent in point of time; it is sufficient if such declarations spring out of the transaction, if they elucidate it, if voluntary and if made at such time as reasonably to exclude the idea of design.[16] Wakefield's statement was made to White 13 days after the fire as part of an investigation and, accordingly, cannot be said to be voluntary or free of all suspicion or afterthought.[17]

The trial court did not err in finding that the statement made by Wakefield was hearsay and did not come within a recognized exception to the hearsay rule. Therefore, Meadowbrook failed to establish a jury issue as to Healthcare's liability, and summary judgment was proper.

*Judgment affirmed. Ruffin and Ellington, JJ., concur.*

DECIDED MARCH 13, 2002.

*Drew, Eckl & Farnham, Harold M. Bagley, Karen K. Karabinos,* for appellants.
*Hawkins & Parnell, Charles R. Beans, Carter & Ansley, Burke B. Johnson, Swift, Currie, McGhee & Hiers, Mark T. Dietrichs, Erik S. Rodriguez,* for appellees.

---

[15] *Hagan v. Goody's Family Clothing,* 227 Ga. App. 585, 586 (490 SE2d 107) (1997).
[16] *Quiktrip Corp. v. Childs,* 220 Ga. App. 463, 466 (3) (469 SE2d 763) (1996).
[17] See *Brooks v. Kroger Co.,* 194 Ga. App. 215, 216 (2) (390 SE2d 280) (1990) (declarations made three days after the accident would *not* be part of the res gestae).