A04A2085. DAVIS v. REID et al.
(612 SE2d 112)

ADAMS, Judge.

Karen Davis filed a medical malpractice action against Dr. William Reid and The Surgery Clinic, P.C.[1] contending that Dr. Reid was professionally negligent in failing to diagnose her breast cancer. Davis died during the pendency of the suit, and Gary Davis, her

---

[1] Davis also sued the radiologist who interpreted her mammograms, but that case was settled prior to trial.

brother as the administrator of her estate, was substituted as the plaintiff. The case was tried before a jury, who rendered a verdict for Dr. Reid. Plaintiff appeals, challenging certain evidentiary rulings by the trial court.

Karen Davis's deposition was videotaped prior to her death, and played for the jury at trial. Davis testified that she first sought treatment from Dr. Reid in 1984 after being diagnosed with cancer in her left breast. Dr. Reid performed a breast-sparing lumpectomy to remove the cancerous lump and also removed Davis's lymph nodes under her left arm. Additionally, Davis underwent radiation treatments on the left side of her chest following surgery. Over the years, Davis continued to see Dr. Reid for regular checks and performed self breast exams each month.

Davis testified that during her six-month check-up on June 7, 1996, she pointed out to Dr. Reid what she described as a red raised bump, which was about the size of a pencil eraser and in the 9:00 to 10:00 o'clock position on her left breast. Davis testified that Dr. Reid told her it was a skin cyst and that it would go away if she would leave it alone. Davis testified she went in for her annual mammogram in July 1996, and she showed the technician the bump because she wanted the radiologist to be aware of it. Because of questions raised by the first mammogram, she was scheduled for a second "cone down magnification" mammogram, which would allow the breast tissue to be seen a little better. The results of that mammogram indicated "microcalcifications" which were believed to be benign. However, Dr. Newton, Davis's gynecologist, recommended that Davis return for a mammogram in six months instead of a year.

Three to four months later, Davis began to feel that her left breast was getting heavier. She went to see Dr. Newton, who recommended that she go ahead and have another mammogram. This mammogram, which was performed in late November, indicated an area of concern in the 12:00 to 3:00 o'clock (from the top to the outside corner) position of Davis's left breast. Dr. Reid examined Davis in early December, and found nothing to indicate cancer, but called her after he received the mammogram results the next day to advise her that the mammogram was indicative of cancer, and that she needed to have a stereotactic biopsy on that breast. That procedure was performed on December 11, and indicated cancer in Davis's left breast. Dr. Reid advised Davis that she needed to have a mastectomy, or removal of the entire breast.

The surgery was performed in January 1997, after initially being delayed because Davis had bronchitis. The surgery was performed by Dr. Reid and by Dr. Hester, a plastic surgeon. Davis testified that the doctors planned to perform a "skin-sparing mastectomy" which leaves most of the skin intact. Davis testified that she told Dr. Hester prior

to the surgery that she wanted the skin cyst removed. Davis said that Dr. Hester informed her after the surgery that they were unable to do the skin-sparing procedure because the skin cyst ended up being a skin lesion and was malignant, so they had to take as much of the breast and skin tissue as possible.

Dr. Reid testified by deposition and in person at trial. According to his testimony, Davis never showed him a spot on her breast, and his examination of her on June 7 did not reveal a lesion. He testified that had a suspicious lesion been present, he would have followed up with a biopsy or other procedure to determine whether it was cancerous. Dr. Reid also testified that he did not visually detect any evidence of cancer and did not see any lesions or bumps on her breast when he examined her on December 3, 1996, and it was not until the mammography report came back on December 4 that he made the decision to biopsy the breast. Dr. Reid testified the biopsy detected cancer, and that he called Davis to tell her that she would have to have surgery to have the left breast removed.

In testifying about the surgery, Dr. Reid said that he and Dr. Hester performed the surgery together, and that before the surgery started Dr. Hester told him that Davis had pointed out to him a lesion on her left breast. Dr. Reid said the lesion was in the 6:00 to 7:00 o'clock position, and it was about three-fourths of a centimeter in size and was flat, and thus could not be detected by touch. He testified the lesion was removed during surgery, and a biopsy done at the time revealed it to be positive for cancer. He testified that because of the existence of the cancer on the skin, as well as in the internal breast tissue, he and Dr. Hester decided that the skin-sparing procedure was not a viable option, and they took as much skin and tissue as possible to attempt to remove all the cancer.

Dr. Hester also testified at trial. According to Dr. Hester, during his examination of Davis on December 23, 1996, she pointed out a small, slightly raised bump in the mid-area of her left breast. Although he said he could not be exactly certain, his recollection was that the lesion was in approximately the 9:00 o'clock position. He also testified that this was the same lesion that was removed during surgery, and both he and Dr. Reid decided the lesion should be biopsied, although at the time he examined it he thought it was benign.

1. Plaintiff first contends that the trial court erred by excluding testimony about conversations between Dr. Reid and Davis while Davis was recuperating in the hospital "in which they discussed Dr. Reid's failure to biopsy Ms. Davis's breast lesion." Plaintiff contends that Dr. Reid's failure to respond to Davis's allegations about this omission constitutes an admission by silence pursuant to OCGA

§ 24-3-36,[2] and that, therefore, testimony about these conversations should have been admitted at trial.

We find no abuse of discretion under the facts here. Our review of the excluded testimony[3] does not reveal that Davis specifically asked Dr. Reid why he had failed to biopsy the breast lesion after the June 7, 1996 office visit, and thus no specific explanation was required. Moreover, contrary to plaintiff's argument on appeal, the record does not show that Dr. Reid failed to respond to the concerns Davis raised during that conversation. Dr. Reid testified as follows about their conversation on the day Davis was released from the hospital:

> She felt that I had delayed her treatment for her cancer and felt that Dr. Steinberg [the radiologist] had delayed her treatment. I told her that she had every option to have a stereotactic biopsy of that calcification on the 17th of July, if that's what she had wanted, but she elected to do the other. Well, of course, that naturally was upsetting her also; ... but I just told her again to settle down and let's concentrate on getting well and that I would discuss it with her later at the — in our office.

Thus, we cannot say, based on the record before us, either that the circumstances demanded a more specific response or that the fact that Dr. Reid indicated they should discuss the concerns at a later time could be construed as silence or acquiescence in the face of Davis's concerns about her treatment.

Plaintiff also argues that the statement should also have been admitted as a prior consistent statement to show that she pointed out the lesion to Dr. Reid during the June 7 visit. Again, however, it does not appear that the excluded testimony was as specific to that issue as plaintiff contends. "Admission of evidence is committed to the sound discretion of the trial court, whose determination shall not be disturbed on appeal unless it amounts to an abuse of discretion." (Citation and punctuation omitted.) *Kohl v. Tirado*, 256 Ga. App. 681, 684 (2) (c) (569 SE2d 576) (2002). We are not persuaded the trial court abused its discretion based on the facts presented here.

---

[2] That section provides that "Acquiescence or silence, when the circumstances require an answer, a denial, or other conduct, may amount to an admission."

[3] Davis testified that on the last day she was in the hospital, she tried to initiate a discussion about the surgery, and that Dr. Reid began yelling at her and telling her that she was worrying too much about the surgery and worrying too much about why they had to do what they did (the more invasive procedure) and that this was impeding her recovery. By plaintiff's attorney's own description, Davis's testimony concerning this conversation was more general than Dr. Reid's.

2. Plaintiff next contends that the trial court erred by refusing to admit testimony from Davis's brother Gary and her friend Debbie Huth that Davis had told them that she showed Dr. Reid the bump on her breast during the June 7 visit, and that Dr. Reid told her not to be concerned about it. The trial court did not allow the witnesses to testify about what Davis told them she told Dr. Reid at the June 7 office visit and did not allow the witnesses to testify about what Davis told them Dr. Reid said to her about the bump. But the trial court did allow testimony about what they saw (that Davis showed them the lesion) and what they observed (that after her check-up with Dr. Reid in June she was relieved).[4]

Plaintiff contends the excluded testimony of these witnesses was admissible as a prior consistent statement because Davis's veracity was placed into issue by Dr. Reid's testimony that she did not show him the lesion during the June 7 visit. But

> [t]his argument misconstrues what it means for a witness's veracity to be attacked. "(A) witness's veracity is placed in issue so as to permit the introduction of a prior consistent statement only if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination." *Woodard[ v. State]*, 269 Ga. [317, 320 (2) (496 SE2d 896) (1998)]. Further, "(u)nless a witness's veracity has affirmatively been placed in issue, the witness's prior consistent statement is pure hearsay evidence, which cannot be admitted merely to corroborate the witness, or to bolster the witness's credibility in the eyes of the jury." . . . Id.

*Pope v. State*, 266 Ga. App. 602, 605-606 (6) (597 SE2d 632) (2004). Davis's trial testimony, via her deposition taken for that purpose, was that she showed Dr. Reid the lesion during the June 7 visit, and he assured her it was nothing to be concerned about. Although defense counsel questioned her on cross-examination about the bump and elicited a more detailed description from her, he did not attack her testimony that she showed it to Dr. Reid on June 7, and did not attack her testimony that Dr. Reid assured her that it was nothing to be concerned about and would go away if she just quit messing with it. Nor was there any suggestion that Davis had recently fabricated that version of events or that her motive in so testifying was improper. The fact that Davis's testimony was at odds with Dr. Reid's about what

---

[4] Gary Davis testified that after the June 7 visit his sister's "heart was light. It was lightened. She was terribly relieved, joking but just relieved. It was like a weight had been somewhat lifted."

occurred at the June 7 meeting does not open the door to the admission of hearsay testimony. *Miller v. State*, 275 Ga. 32, 37 (4) (561 SE2d 810) (2002).

Plaintiff also makes the additional argument that this testimony was admissible under the res gestae exception to the hearsay rule. OCGA § 24-3-3 provides that "[d]eclarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae." "To fall within the res gestae, a statement must be contemporaneous with the main fact, but need not be precisely concurrent in point of time; it is sufficient if such declarations spring out of the transaction, if they elucidate it, if voluntary and if made at such time as reasonably to exclude the idea of design." (Footnote omitted.) *HCP III Woodstock, Inc. v. Healthcare Svcs. Group*, 254 Ga. App. 242, 246 (562 SE2d 225) (2002).

First, it is unclear from the record precisely how much time elapsed between Davis's June 7 examination and when she made the statements to the two witnesses. Plaintiff's counsel proffered that the statements were made "shortly after" the doctor's visit, but the exact time frame was not established. Moreover, although the timing of the statements is not necessarily dispositive of their admissibility depending on the sequence of events, in this case the circumstances surrounding the making of the statements were unknown. Davis did not testify in her deposition that she told these witnesses about the June 7 office visit, and thus there is no way to establish the exact sequence of events that occurred between her office visit on June 7 and her discussion with the witnesses about that office visit, and no way to determine the circumstances surrounding the making of the statements. "Whether a statement made after the event qualifies for admission under the res gestae rule is a matter within the discretion of the trial court, and, on appeal, that ruling will not be overturned unless it is clearly erroneous." (Citation omitted.) *Harper v. Patterson*, 270 Ga. App. 437, 444 (3) (b) (606 SE2d 887) (2004).

Moreover, by allowing the witnesses to testify to nonhearsay matters — that they saw the bump on Davis's breast and that they observed her relief after the June 7 examination, the trial court admitted the substance of what plaintiff sought to prove. *Miller v. State*, 275 Ga. at 37 (4). The trial court did not abuse its discretion under these circumstances.

3. Lastly, plaintiff contends that the trial court erred by admitting into evidence entries contained in the medical records of two doctors who did not testify at trial. These entries were made by Dr. Newton, Davis's gynecologist, and Dr. Garrison, the doctor who prepared the pathology report following surgery.

Although it is somewhat difficult to ascertain exactly what transpired concerning the admission of this evidence by simply reading the record before us, it does appear that in the first instance complained about, which involved an objection by plaintiff to plaintiff's expert, Dr. Glover, testifying on cross-examination to certain medical records prepared by Dr. Newton that were not yet in evidence, defense counsel stated in his place that the records would later be introduced into evidence and the trial court instructed the jury to "hold it against" him if they were not. Thus, it appears the trial court only conditionally approved the testimony, dependent upon the subsequent admission of the evidence.[5]

Later in the trial, Dr. Reid testified both from Dr. Newton's records and the pathology report prepared by Dr. Garrison. Plaintiff posed a hearsay objection to this evidence. The trial court overruled the objection to Dr. Reid testifying from the pathology report, after defense counsel noted that it was the same exhibit that had been used by plaintiff when plaintiff had Dr. Glover on direct examination the day before. We find no abuse of discretion under these circumstances, especially in light of the fact that unobjected to testimony concerning the findings from the pathologist's report was introduced from several witnesses during the trial.

Plaintiff also contends the trial court erred in allowing Dr. Reid to testify that the report he received from Dr. Newton stated that the July mammogram report had been discussed with Davis and that the recommendation was to do another mammogram in six months. Pretermitting whether the trial court erred in overruling plaintiff's objection to this testimony, the fact that Dr. Newton had recommended that Davis have another mammogram in six months was merely cumulative of other testimony, including Davis's. "The erroneous admission of hearsay testimony is harmless where it is cumulative of legally admissible evidence of the same fact. . . ." (Citations omitted.) *Myers v. State*, 275 Ga. 709, 712 (2) (572 SE2d 606) (2002).

> "Admission of evidence is committed to the sound discretion of the trial court, whose determination shall not be disturbed on appeal unless it amounts to an abuse of discretion." (Citation and punctuation omitted.) *Chambers v. Gwinnett Community Hosp.*, 253 Ga. App. 25, 26 (1) (557 SE2d 412) (2001). We find no abuse of discretion here.

---

[5] When defense counsel subsequently attempted to introduce Dr. Newton's report, plaintiff objected and, after defense counsel agreed not to introduce the evidence "if he doesn't want them to see it," the trial court sustained the objection to the introduction of the report.

*Kohl v. Tirado*, 256 Ga. App. at 684 (2) (c).
*Judgment affirmed. Ruffin, C. J., and Bernes, J., concur.*

DECIDED MARCH 21, 2005.

Brown & Shamp, Robert H. Brown III, Doffermyre, Shields, Canfield & Knowles, Robert E. Shields, for appellant.
Weinberg, Wheeler, Hudgins, Gunn & Dial, Ashley P. Nichols, Jennifer R. Bradford, for appellees.