## A07A1942. AMERICAN SOUTHERN INSURANCE GROUP, INC. et al. v. GOLDSTEIN et al.
## A07A1943. GOLDSTEIN v. AMERICAN SOUTHERN INSURANCE GROUP, INC. et al.

(660 SE2d 810)

PHIPPS, Judge.

American Southern Insurance Group, Inc. and one of its former sales agents, Judy Wilson, sued Combined Insurance Company of America, Inc. and one of its former sales agents, Howard Goldstein. American Southern brought a tortious interference with business relations claim against Combined, alleging that Combined's agents and employees had impermissibly induced individuals not to enter into or continue contractual or business relationships with American Southern. Wilson brought slander per se claims against Combined and Goldstein.

At trial, the court made various evidentiary rulings outside the jury's presence; directed a verdict against American Southern on its tortious interference claim; directed a verdict against Wilson on certain of her slander per se claims against Combined and Goldstein; and ruled that remarks Goldstein made at Wilson's home could not serve as a separate basis of recovery. Wilson's remaining claims of slander per se against Combined and Goldstein proceeded to the jury. The jury found Goldstein liable, but not Combined. Final judgment was entered upon the jury's verdict.

In Case No. A07A1942, American Southern and Wilson appeal. They challenge various evidentiary rulings. In addition, Wilson contends that the trial court erroneously barred her several slander

per se claims from jury presentment. In Case No. A07A1943, Goldstein cross-appeals. He argues he was entitled to a directed verdict on Wilson's slander per se claim upon which the jury found him liable. Because no party has shown reversible error in either case, we affirm in both cases.

The evidence at the 2005 trial showed that two Combined employees left that company and founded American Southern in 1986. According to one such individual, Larry Buckley, who later became American Southern's President and CEO, the new company began operating in Mississippi with about seven employees, before branching into other southern states. Initially, American Southern sold insurance policies underwritten by Dixie National Life Insurance Company. Later, American Southern expanded into other states and also sold policies underwritten by Occidental Life Insurance Company. Buckley testified that the company grossed $3,500,000 during its first year; during its second year, it grossed $14,000,000; and within two years of start up, the company was operating in 23 states and employed 248 agents.

In June 1988, however, Buckley noted that many of the company's customers were canceling their policies. After talking with customers and sales managers and investigating the cancellations in numerous states including Alabama, Georgia, Louisiana, Tennessee, and Mississippi, Buckley concluded that Combined was interfering with American Southern's contractual relations with its policyholders.

Wilson, a former Combined sales agent, began working for American Southern as a sales agent in March 1987. She was paid on commission and built a clientele by "knocking on doors" primarily in northern Georgia counties. Wilson testified that starting around June 1988, many of her policyholders were canceling policies she had written. Based upon discussions with various of her customers and remarks by Goldstein to her and to one of her customers, Wilson concluded that a slanderous campaign had been launched against her. She testified that before June 1988, she was well-liked in the areas where she sold insurance and had an excellent professional reputation; afterward, however, her reputation "went down the tubes"; her income essentially stopped; and she was forced out of business.

Theada Tolbert, another former Combined employee who began working for American Southern as a "door to door" insurance agent in northern Georgia counties, testified to an incident that occurred in the summer of 1988. Tolbert had arrived at a residence, where she had planned "to explain Dixie National insurance policies." She testified, "I believe I had an appointment to talk to them. I don't think it was a cold call. I believe I had an appointment." While

Tolbert was standing outside the residence, a Combined insurance agent shoved past her to talk to the residents first. When the Combined agent came out of the house, the residents declined to meet with Tolbert. As Tolbert walked to her car, the Combined agent yelled to her that she was a liar and her company was a fraud. Tolbert testified that around that time, selling insurance policies had become increasingly difficult.

Buckley testified that American Southern fought what it perceived as wrongful interference by Combined's agents and employees. As part of that combat, the company, along with Wilson, filed the instant lawsuit in 1989. Nevertheless, the company went out of business the following year.

Combined defended the lawsuit by asserting that it had employed competitive, but fair, legal, and ethical tactics to regain customers lost to American Southern. It adduced evidence that around June 1988, its sales agents were systematically canvassing homes and businesses, door-to-door, in northern Georgia areas. They discovered that Combined's policies were being replaced by ones underwritten by Dixie National. Combined presented evidence that, while it was concerned about preserving its accounts and policyholders in the northern Georgia area, it had employed no strategy to put American Southern or Wilson out of business. Rather, it had focused on enthusiastically selling its own insurance products.

### Case No. A07A1942

1. American Southern and Wilson contend that the trial court erred in excluding their evidence that American Southern customers had cancelled their American Southern policies because of misrepresentations by Combined's agents.

At trial, American Southern and Wilson's counsel told the court that, from early June 1988 through 1989, when American Southern's policies were being cancelled throughout 23 states, American Southern's agents interviewed policyholders who stated they were canceling because of representations made by Combined's agents. Rather than present any such policyholder as a witness, American Southern sought to have the policyholders' purported statements presented to the jury through the testimony of Buckley and Wilson under the res gestae exception to the hearsay rule.[1] The trial court ruled that the hearsay statements did not fall within the res gestae.

OCGA § 24-3-3 provides, ''Declarations accompanying an act, or

---

[1] See *White v. Cudahy Co.*, 130 Ga. App. 64, 66 (1) (202 SE2d 233) (1973) (in slander action, plaintiff's testimony concerning rumors she heard from other employees that she was terminated for taking funds was impermissible hearsay).

so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae."

> To fall within the res gestae, a statement must be contemporaneous with the main fact, but need not be precisely concurrent in point of time; it is sufficient if such declarations spring out of the transaction, if they elucidate it, if voluntary and if made at such time as reasonably to exclude the idea of design.[2]

"Whether a statement made after the event qualifies for admission under the res gestae rule is a matter within the discretion of the trial court, and, on appeal, that ruling will not be overturned unless it is clearly erroneous."[3]

We find no error. American Southern and Wilson have failed to show, inter alia, that any purported statement by one of many policyholders located in 23 states over such an extended period of time was "contemporaneous with [a] main fact," which in this case, would be any alleged tortious statement by a Combined agent.[4]

2. Wilson contends that the trial court erred by directing a verdict against her and in favor of Combined and Goldstein on her claims of slander per se under OCGA § 51-5-4 (a) (1). Pursuant to this Code provision, "[s]lander . . . consists in . . . [i]mputing to another a crime punishable by law."[5]

To support this claim, Wilson showed that Goldstein went to the home of one of her customers, Mavis Arrowood, where the following exchanged occurred:

> Arrowood: Well, why did you tell me yesterday that Judy left Combined?

> Goldstein: If what I have been told Judy was terminated from Combined at one point in time and reinstated in

---

[2] *Davis v. Reid*, 272 Ga. App. 312, 317 (2) (612 SE2d 112) (2005) (citation and punctuation omitted).

[3] Id. (citation and punctuation omitted).

[4] See id. (where record failed to show the timing and surrounding circumstances of the hearsay statement, exclusion of same was not an abuse of discretion); *Harper v. Patterson*, 270 Ga. App. 437, 443-444 (3) (b) (606 SE2d 887) (2004) (where witness could not state with any degree of certainty when the statement was made in relation to when the alleged tort occurred, the trial court did not abuse its discretion in ruling that the statement did not qualify as part of the res gestae); *Butler v. Stewart*, 112 Ga. App. 293, 296 (145 SE2d 47) (1965) (declarations that are "merely the narrative of a past occurrence" cannot be received into evidence under the res gestae exception) (citation and punctuation omitted).

[5] OCGA § 51-5-4 (a) (1).

another state. But I've been told that she was terminated from Georgia.

Arrowood: For what?

Goldstein: Misappropriation of funds.

. . .

Goldstein: Well, you know, again I've spoken with Judy and Judy is, you know, upset and swearing we're doing her wrong and telling lies and stuff like that, which is why I immediately called Atlanta to verify it through the home office. And the home office is ready to stand a lawsuit. You know, what has been said is a fact and they can prove it in a court of law.

Wilson denied ever misappropriating funds. She testified further that her employment with Combined had been terminated because she had been unable to return to work within six months of suffering severe injuries caused by an automobile accident. Directing a verdict against Wilson, the court explained that it was "not aware of any crime charging theft by misappropriation of funds."

Wilson contends on appeal that the trial court erred by rejecting her argument that Goldstein's "misappropriation" remarks imputed to her the crime of theft by taking. Pursuant to OCGA § 16-8-2,

A person commits the offense of theft by taking when [s]he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving [her] of the property, regardless of the manner in which the property is taken or appropriated.

Pretermitting whether the trial court erroneously struck Wilson's claim of slander brought under OCGA § 51-5-4 (a) (1), we find for the following reasons that Wilson has shown no prejudice as to either Goldstein or Combined. And where no prejudice has been shown, "there is no reversible error. An appellate court is not an expounder of theoretical law but it administers practical law, and corrects only such errors as have practically wronged the complaining party."[6]

(a) As to Goldstein, Wilson has failed to show that she was prejudiced by the ruling. Based upon the same "misappropriation"

---

[6] *Smith v. Stacey*, 281 Ga. 601, 602 (1) (642 SE2d 28) (2007) (citation and punctuation omitted).

remarks by Goldstein, Wilson alleged against Goldstein an alternative claim of slander per se under OCGA § 51-5-4 (a) (3). Under that provision, "[s]lander . . . consists in . . . [m]aking charges against another in reference to [her] trade, office, or profession, calculated to injure [her] therein."[7] Goldstein's motion for directed verdict on this theory was correctly denied,[8] and the jury subsequently found in Wilson's favor on this claim.

"Georgia, as part of its common law and public policy, has always prohibited a plaintiff from a double recovery of damages; the plaintiff is entitled to only one recovery and satisfaction of damages, because such recovery and satisfaction is deemed to make the plaintiff whole."[9] Having recovered against Goldstein for his "misappropriation" remarks under a slander per se theory set forth in OCGA § 51-5-4 (a), Wilson would not have been entitled to additional damages under an alternative theory of slander per se under that Code provision.

(b) As to Combined, Wilson has failed to show that she was prejudiced by the ruling. Based upon the same "misappropriation" remarks by Goldstein, Wilson alleged against Combined an alternative claim of slander per se under OCGA § 51-5-4 (a) (3). The jury found on a special verdict form that Goldstein's remarks had not been pursuant to Combined's direction, order, or authority.[10] In light of this jury finding, which is not contested on appeal, Wilson cannot show that she would have been able to recover against Combined with respect to Goldstein's "misappropriation" remarks.

3. Wilson contends that the trial court erred by prohibiting her from presenting to the jury a claim of slander per se with respect to other statements by Goldstein. Wilson testified that on June 2, 1988, at her house and in front of her husband, Goldstein stated that she was a thief, that she had embezzled money from Combined, and that she had robbed that company. She testified that these representations by Goldstein were false.

---

[7] Notably, both paragraphs (1) and (3) of OCGA § 51-5-4 (a) constitute slander per se and thus require no showing of special damage. OCGA § 51-5-4 (b) ("In the situation described in paragraph (4) of subsection (a) of this Code section, special damage is essential to support an action; in the situations described in paragraphs (1) through (3) of subsection (a) of this Code section, damage is inferred.").

[8] See Division 7, infra.

[9] *Ga. Northeastern R. v. Lusk*, 277 Ga. 245, 246 (1) (587 SE2d 643) (2003) (citations omitted).

[10] *Galardi v. Steele-Inman*, 266 Ga. App. 515, 517 (1) (597 SE2d 571) (2004) (a corporation is not liable for the slanderous utterances of an agent acting within the scope of his employment, unless it affirmatively appears that the agent was expressly directed or authorized to slander the plaintiff).

In ruling that no separate slander per se claim could be based upon Goldstein's alleged statements during this incident, the court explained, "I'm ruling that wasn't alleged in the complaint and [the defendants] weren't placed on notice to defend against it. The complaint was very specific as to the incident at *customers'* houses."[11] Wilson's counsel then asserted, "It would certainly come in to show a pattern of conduct and go to show intent. . . ." The court responded, "I'm going to let any evidence that's been fairly presented to be mentioned during closing arguments."

On appeal, Wilson does not assert that her complaint claimed as a separate basis for recovery the statements Goldstein made at her house; nor does she show that the pre-trial order apparently entered in this case included such a claim. Instead, she points out that Georgia is a notice-pleading state, that she testified to the incident without contemporaneous objection, and that OCGA § 9-11-15 (b) provides, "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."

> When the evidence that is claimed to show that an issue was tried by consent is relevant to an issue already in the case, as well as to the one that is the subject matter of the amendment, and there was no indication at trial that the party who introduced the evidence was seeking to raise a new issue, the pleadings will not be deemed amended under . . . OCGA § 9-11-15 (b). The reasoning behind this view is sound since if evidence is introduced to support basic issues that already have been pleaded, the opposing party may not be conscious of its relevance to issues not raised by the pleadings unless that fact is specifically brought to his attention. Whether an issue has been tried by the implied consent of the parties is a question of fact and a decision on this question is generally considered to be within the sound discretion of the trial court.[12]

The trial transcript reveals that Goldstein's attorney expressly objected to Goldstein's statements at issue here being presented to the jury as a separate basis of recovery. While Goldstein's attorney did not object when Wilson testified to the incident that occurred at her house, "consent to try the issue cannot be implied from [a defendant's] failure to object to [the evidence upon which the

---

[11] (Emphasis supplied.)

[12] *Fussell Sheet Metal v. Artistic Constr. & Landscaping*, 174 Ga. App. 618, 619 (1) (330 SE2d 813) (1985) (citation and punctuation omitted).

plaintiff relies], where such evidence was also relevant to other issues properly pleaded."[13] As urged by Wilson's counsel at trial and as apparently accepted by the trial court, Wilson's testimony about the incident at her house was relevant to other issues properly pleaded.[14] Under these circumstances, the trial court was authorized to find that the issue was not tried by the implied consent of the parties and therefore did not abuse its discretion by disallowing her from presenting to the jury a separate claim of slander per se based on those statements.[15]

4. American Southern and Wilson contend that the trial court erred in excluding (a) a complaint, (b) a settlement agreement, and (c) a final judgment and order, all of which they claim pertained to an out-of-state trial court case styled *The People of the State of New York by Eliot Spitzer v. Aon Corporation*. At the trial in the instant case, American Southern and Wilson showed that Combined was then a subsidiary of Aon Corporation. American Southern and Wilson's counsel proffered that Aon had acquired Combined in the 1980s, that "Aon Corporation and its subsidiaries" were parties to the settlement agreement that resulted from the complaint,[16] and that the settlement agreement had been incorporated into a final judgment and order in the out-of-state case.[17] Further, American Southern and Wilson's counsel proffered that the documents showed a pattern of misconduct by Aon; that Aon Corporation's CEO had admitted in the settlement agreement to Aon's misconduct; and that the CEO's statements were admissible in the instant case under OCGA § 24-3-31[18] and as admissions in judicio.

Combined objected that the documents were irrelevant and unduly prejudicial. It pointed out that the settlement agreement showed a 2005 date, about 17 years after the acts alleged in the instant case; and it asserted that the acts described within the documents were "entirely different and unrelated to the claims" asserted in the instant case. The trial court ruled that the documents were inadmissible as irrelevant and unduly prejudicial.

American Southern and Wilson contend that the trial court erred in excluding the documents based upon those grounds. They point out that OCGA § 24-3-31 provides that, with exceptions they

---

[13] *Borenstein v. Blumenfeld*, 250 Ga. 606, 607-608 (1) (299 SE2d 727) (1983).

[14] See Divisions 2, supra, and 7, infra.

[15] See *Fussell Sheet Metal*, supra.

[16] The document American Southern and Wilson claim as the settlement agreement contains no signature.

[17] American Southern and Wilson have failed to include in the record the purported judgment and final order.

[18] OCGA § 24-3-31 pertinently provides, "The admission by a party to the record shall be admissible in evidence when offered by the other side."

claim are inapplicable here, an admission by "a party to the record *shall* be admissible in evidence."[19] In addition, they rely on the principle that "[a]n admission in open court is an admission in judicio; a judicial admission is conclusive."[20]

Pretermitting whether the documents contain any statement cognizable as an admission by "a party to the record" or as an admission in judicio, we find no error. Notwithstanding the cited evidentiary rules, Georgia law requires that, to be admissible, "[e]vidence must relate to the questions being tried by the jury and bear upon them either directly or indirectly. Irrelevant matter should be excluded."[21] "[Q]uestions of relevance are within the domain of the trial court, and, absent a manifest abuse of discretion, a court's refusal to admit evidence on grounds of lack of relevance will not be disturbed on appeal."[22] Moreover, the court may exercise its discretion in excluding relevant evidence if it finds that "its probative value is substantially outweighed by the risk that its admission will create substantial danger of undue prejudice or of confusing the issues or of misleading the jury."[23]

American Southern and Wilson have not shown any alleged admission pertinent here. Specifically, they have cited to this court nothing showing that the alleged acts underlying the proffered complaint and settlement agreement were related to the questions tried in the instant case.[24] Because American Southern and Wilson have failed to make this requisite showing, we find no abuse of discretion in the trial court's ruling, where "[t]he evidence was not relevant and even if it can be said that it had any probative value, it was substantially outweighed by the danger of undue prejudice."[25]

5. American Southern contends that the trial court erred in excluding testimony of its expert economist, which it claimed would show its financial injury as to its tortious interference claim. The

---

[19] (Emphasis supplied.)

[20] *Rhone v. Bolden*, 270 Ga. App. 712, 715 (2) (608 SE2d 22) (2004) (citation and punctuation omitted).

[21] OCGA § 24-2-1; see *Allen v. Lefkoff, Duncan, Grimes & Dermer, P.C.*, 265 Ga. 374, 376 (2) (b) (453 SE2d 719) (1995).

[22] *Goss v. Total Chipping*, 220 Ga. App. 643, 644 (2) (a) (469 SE2d 855) (1996) (citation and punctuation omitted).

[23] Id. (citation and punctuation omitted).

[24] "Under this Court's rules, references to the record must be both to a specific volume or part of the record and by specific page number. Moreover, this Court has made abundantly clear that we will not cull the record on behalf of a party." *In the Interest of C. T.*, 286 Ga. App. 186, 187 (1) (648 SE2d 708) (2007) (footnotes omitted).

[25] *Snider v. Basilio*, 281 Ga. 261, 263-264 (637 SE2d 40) (2006) (citation omitted); see generally *Taylor v. RaceTrac Petroleum*, 238 Ga. App. 761, 762 (1) (519 SE2d 282) (1999) (one party may not influence jury to find against other party on account of some act which it may have committed on another occasion, in a different situation, and with other parties).

court disallowed the testimony under OCGA § 24-9-67.1 (b), which, requires, among other things, that "[t]he testimony is based upon sufficient facts or data which are or will be admitted into evidence at the hearing or trial."[26]

In a proffer, the expert gave the basis for his testimony. He stated that Buckley had told him that American Southern had about 200 sales agents; told him the number of states in which the company had sold policies; and informed him of "the percentage of the commission that the agent received and the percentage of profit that the company was netting out of the revenues" from 1986 through 1988. Buckley had also told him that American Southern had been "doing over a quarter million a week in annualized premiums; that the typical agent was writing annualized premiums of 2,000 to 2,500 per week; that Judy Wilson was a typical agent, although she wasn't writing . . . quite that much." Describing his computation of American Southern's economic damages, the expert explained that he began by using Wilson's commission data for 11 months, which he annualized. That data, along with information provided by Buckley, allowed him to calculate the company's projected revenues, to which he applied various factors such as inflation and the anticipated growth rate of the company. The expert also had considered a 1988 letter, signed by American Southern's vice president, concerning the company's annualized premiums with respect to one of its underwriters, Occidental.

Objecting that the basis of the expert's testimony was insufficient, Combined pointed out that the expert had reviewed no American Southern tax return, balance sheet, expense statement, or any other accounting or financial record reflecting the company's actual profits and losses. Combined complained further that the expert had extrapolated American Southern's economic loss primarily from Wilson's commission statement for part of one year. It argued that the partial sales history of a single agent, along with a letter referencing annualized premiums from the sale of only certain life insurance policies and unsupported representations by Buckley, did not provide an adequate basis for the expert's opinion under OCGA § 24-9-67.1 (b).

In excluding the expert's testimony, the trial court found problematic that Southern American had not preserved pertinent financial reports, such as those listed by Combined. Furthermore, it remarked, "To say that one agent that is working on a commission basis out of over 200 agents working in 23 states is representative

---

[26] OCGA § 24-9-67.1 (b) (1).

and is average when there is no basis to say what is average through documents and records I think is unconscionable."

The admissibility of expert testimony rests in the broad discretion of the trial court, which ruling cannot be reversed absent an abuse of discretion.[27] Employing an abuse of discretion standard, we find no error in the trial court's exclusion of the testimony as not based upon "sufficient facts or data which are or will be admitted into evidence at the hearing or trial."[28] Although American Southern points to the expert's knowledge, skill, experience, training, and education in the field of economics, it is apparent that the trial court's ruling was not based upon lack of qualifications in that field.

6. American Southern contends that the trial court erred in granting Combined's motion for a directed verdict on its claim of tortious interference with business relations. "A directed verdict may be granted where the evidence and all reasonable deductions therefrom demand a verdict in the movant's favor."[29] "The standard for appellate review of a directed verdict is the 'any evidence' test."[30]

> [T]o recover on a claim for tortious interference with business relations the evidence must show the defendant (1) acted improperly and without privilege, (2) purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) for which the plaintiff suffered some financial injury.[31]

Seeking a directed verdict in its favor, Combined asserted that American Southern's tortious interference claim was based upon alleged slanderous statements by Combined agents and employees; that American Southern had shown policy cancellations and a single cancelled appointment during the relevant period; but that it had presented no evidence that any false statement by a Combined agent or employee had induced a third party not to enter into or continue a business relationship with American Southern.

(a) American Southern countered that because the reports from its policyholders throughout several states that Combined's agents were making negative statements about American Southern and its agents "were so closely related in time" to otherwise unexplained

---

[27] *Cotten v. Phillips*, 280 Ga. App. 280, 283 (633 SE2d 655) (2006).

[28] OCGA § 24-9-67.1 (b) (1).

[29] *Willis v. Kennedy*, 267 Ga. 165, 166 (2) (476 SE2d 246) (1996) (citations omitted).

[30] *Howard v. Rivers*, 266 Ga. 185 (1) (465 SE2d 666) (1996) (citation and punctuation omitted).

[31] *Second Continental v. Atlanta E-Z Builders*, 237 Ga. App. 304, 305-306 (1) (514 SE2d 846) (1999) (citation and punctuation omitted).

and widespread policy cancellations, the tortious interference claim should be presented to a jury. But as we have determined, the trial court did not abuse its discretion by excluding those reports as hearsay.[32]

(b) American Southern also cited evidence that Combined's agent, Goldstein, had made a false statement about Wilson to one of her customers, Arrowood.[33] But it is uncontroverted that Arrowood did not cancel her American Southern policy.

(c) American Southern further cited the incident involving one of its former agents, Tolbert. Individuals to whom Tolbert had planned "to explain Dixie National insurance policies" declined to meet with her after meeting with a Combined agent and the Combined agent then yelled to Tolbert that she was a liar and her company was a fraud. Even viewed most favorably to American Southern, the evidence falls short of showing error by the trial court. The individuals who declined to meet with Tolbert did not testify; nor did the Combined agent. Thus, American Southern has not shown that the individuals who cancelled their appointment with Tolbert did so because of any antecedent misrepresentation by the Combined agent. Moreover, it would require speculation to conclude that, absent the alleged interference, the individuals were reasonably likely to have entered into a business relationship with American Southern through Tolbert.[34]

Because American Southern presented no competent evidence to show that it either lost or failed to acquire any business relationship due to an improper and malicious action by Combined, the trial court properly granted Combined's motion for directed verdict on the claim of tortious interference with business relations.[35]

---

[32] See Division 1, supra.

[33] See further Divisions 2, supra, and 7, infra.

[34] See *Galardi*, supra at 521-522 (3) (claim for tortious interference with prospective business relations cannot be based on speculation that a relationship would have developed; such cause of action requires plaintiff to establish that absent the alleged interference, business relations were reasonably likely to develop in fact); see generally *Dildine v. Town & Country Truck Sales*, 259 Ga. App. 732, 734 (1) (577 SE2d 882) (2003) (factual interference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility).

[35] See *The Boeing Co. v. Blane Intl. Group*, 276 Ga. App. 672, 675 (1) (624 SE2d 227) (2005) (tortious interference claim failed where plaintiff produced no probative evidence to show that defendant's communications induced a breach of contract or caused a third party to discontinue a business relationship with it); *Jenkins v. Gen. Hosp. of Humana*, 196 Ga. App. 150, 151 (395 SE2d 396) (1990); see generally *Barnwell v. Barnett & Co.*, 222 Ga. App. 694-695 (1) (476 SE2d 1) (1996); compare *Chong v. Reebaa Constr. Co.*, 284 Ga. App. 830, 834-837 (4) (a), (b) (645 SE2d 47) (2007) (directed verdict to defendant on general contractor's claim of tortious interference was erroneous where subcontractor testified that defendant's statement that the general contractor was "a liar and a crook" affected his decision not to work for the general contractor on other projects, and general contractor was thereafter limited to small

## Case No. A07A1943

7. Goldstein contends that the trial court erred in denying his motion for directed verdict on Wilson's claim for slander per se under OCGA § 51-5-4 (a) (3) with respect to his "misappropriation" remarks.[36] Under that provision, "[s]lander . . . consists in . . . [m]aking charges against another in reference to his trade, office, or profession, calculated to injure him therein."

(a) Goldstein argues that his remarks do not fall within the ambit of that Code provision.

> The kind of aspersion necessary to come under this phase of the rule of slander per se must be one that is especially injurious to the plaintiff's reputation because of the particular demands or qualifications of plaintiff's vocation. (T)he words must either be spoken of the plaintiff in connection with his calling or they must be of such a nature such as to charge him with some defect of character or lack of knowledge, skill, or capacity as necessarily to affect his competency successfully to carry on his business, trade, or profession.[37]

Looking to the plain import of Goldstein's words and employing neither innuendo nor a strained construction,[38] Goldstein's remarks were in connection with Wilson's profession. Moreover, in light of the particular demands or qualifications of Wilson's profession as a door-to-door insurance sales agent, Goldstein's remarks that Wilson had been terminated from Combined for misappropriation of funds were recognizable as injurious on their face and as casting aspersions on her reputation.[39] Therefore, the trial court did not err by rejecting Goldstein's argument that he was entitled to a directed verdict.

(b) Goldstein argues that his remarks were not actionable because they related only to a single instance. "The 'single instance' rule has application to charges which imply that plaintiff is unfit to carry on his profession or calling. In essence it is that a charge that

---

jobs and the general contractor's business plummeted), rev'd on other grounds, *Reebaa Constr. Co. v. Chong*, 283 Ga. 222 (657 SE2d 826) (2008).

[36] See further Division 2, supra.

[37] *Bellemeade, LLC v. Stoker*, 280 Ga. 635, 637 (631 SE2d 693) (2006) (citation and punctuation omitted).

[38] See id. at 637-638.

[39] See *Bd. of Public Safety v. Jordan*, 252 Ga. App. 577, 583-584 (1) (556 SE2d 837) (2001) (terminated employee's allegations concerning state board's purported statements to the media that the employee was engaged in extravagant seminars and was misusing state funds constituted slander under OCGA § 51-5-4 (a) (3)).

plaintiff in a single instance was guilty of a mistake, impropriety or other unprofessional conduct does not imply that he is generally unfit."[40] To be actionable, "the charge must be of something that affects [the plaintiff's] character generally in his [or her] trade. A particular act may or may not do this, and the matter would depend on the colloquium."[41]

Goldstein cites *Crown Andersen, Inc. v. Ga. Gulf Corp.*,[42] wherein this court determined that the defendants' statements about a particular boiler failing to meet specifications and failing to entirely combust the material pertaining to a single piece of equipment installed by plaintiffs were a comment about a single instance or transaction that did not impute gross negligence or unskillfulness or reflect generally on plaintiffs' skill in the trade.[43] Goldstein also cites *Holder Constr. Co. v. Ed Smith & Sons*,[44] wherein this court determined that a letter accusing plaintiff of failing to inquire into the hazards of blasting in a particular area (leading to a damaged water line) could not constitute libel per se, for it imputed mere negligence to plaintiff as to a single transaction and was therefore insufficient to impute gross negligence or unskillfulness generally in the trade.

But this case is distinguishable from those cited by Goldstein. Goldstein charged that Wilson's misappropriation of funds had resulted in her being "terminated from Combined," even "terminated from Georgia." Nothing in Goldstein's statements limited the alleged misappropriation to a single occasion.[45] Moreover, Wilson's industry depended upon its professionals to collect and manage funds entrusted unto them. A charge that her misappropriation of funds had caused her to be "terminated from Combined" and "terminated from Georgia" was recognizable as implying that Wilson was generally unfit for her profession. We find no error in the trial court's ruling allowing this claim to be decided by the jury.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED MARCH 26, 2008 —
RECONSIDERATION DENIED APRIL 10, 2008 —

---

[40] *Holder Constr. Co. v. Ed Smith & Sons, Inc.*, 124 Ga. App. 89, 91 (2) (182 SE2d 919) (1971) (citations and punctuation omitted).

[41] Id., quoting *Van Epps v. Jones*, 50 Ga. 238, 241 (1873) (punctuation omitted).

[42] 251 Ga. App. 551 (554 SE2d 518) (2001).

[43] Id. at 554 (2).

[44] Supra.

[45] Compare *Crown Anderson*, supra (language imputing to a business or professional man ignorance, mistake, or negligence on a single occasion does not imply that he is generally unfit and therefore does not constitute slander per se under OCGA § 51-5-4 (a) (3)).

*Kennedy, Kennedy, Kennedy & Kennedy, Harold L. Kennedy III, Harvey L. Kennedy*, for appellants.

*Dietrick, Evans, Scholz & Williams, Scott E. Tinnon*, for appellees.