**THIRD DIVISION
MCFADDEN, C. J.,
DOYLE, P. J., and HODGES, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 17, 2020**

# In the Court of Appeals of Georgia

A20A0665. EMORY UNIVERSITY et al. v. WILLCOX.

McFADDEN, Chief Judge.

In this wrongful death case, Mary Kay Willcox, the administrator of the estate of Corlett Evans, alleges that, during a hospitalization in June and July 2015, Evans developed paraplegia as the result of the medical malpractice of the various defendants and their employees, and that she died more than two years later of complications of that paraplegia. This interlocutory appeal concerns the admissibility of expert opinion evidence that Evans's paraplegia caused her death. Because we find that the trial court did not abuse her discretion in allowing the opinion evidence, we affirm.

1. *Applicable law and standard of review.*

Under Georgia's Evidence Code, the testimony of a qualified expert is admissible if (1) it is "based upon sufficient facts or data"; (2) it is "the product of reliable principles and methods"; and (3) the expert witness "has applied the principles and methods reliably to the facts of the case[.]" OCGA § 24-7-702 (b). This statutory language is materially identical both to Federal Rule of Evidence 702 and to former OCGA § 24-9-67.1 (b) under our old Evidence Code. Our Supreme Court has held that, in this circumstance, the new Evidence Code provision "reflects the federal rule's meaning, displacing any other." *State v. Almanza*, 304 Ga. 553, 558 (2) (820 SE2d 1) (2018). As a result,

> we look to federal appellate precedent until a Georgia appellate court decides the issue under the new Code. The fact that the words of [these rules governing admissibility of expert testimony] remain substantively unchanged between the old and new Evidence Code is inconsequential; because the state rule mirrors Federal Rule [702], it is now read as interpreted by the federal appellate courts as of the effective date of the new Code.

Id. (footnote omitted). So "we do not look to cases decided under our former Evidence Code, even though the . . . parties have cited to them, because that precedent 'did not survive the adoption of the new Evidence Code.' *Almanza*, 304 Ga. at 555 (1)." *Bashir v. State*, 350 Ga. App. 852, 857 (3) (830 SE2d 353) (2019).

2

Although there are many Georgia decisions interpreting OCGA § 24-7-702 generally, no Georgia appellate courts have ruled on the specific aspect of OCGA § 24-7-702 at issue in this appeal, discussed below in Division 2, concerning the application of the "sufficient facts or data" requirement to opinions regarding medical causation.

"Under OCGA § 24-7-702, it is the role of the trial court to act as a gatekeeper of expert testimony." *Yugueros v. Robles*, 300 Ga. 58, 67 (793 SE2d 42) (2016). In this role, the trial court "assess[es] both the witness' qualifications to testify in a particular area of expertise and the relevancy and reliability of the proffered testimony." *Toyo Tire North America Mfg. v. Davis*, 299 Ga. 155, 160-161 (2) (787 SE2d 171) (2016) (citation and punctuation omitted). See *Dubois v. Brantley*, 297 Ga. 575, 580 (2) (775 SE2d 512) (2015). The Eleventh Circuit describes that assessment as a "rigorous three-part inquiry" in which the trial court considers

> whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert* [*v. Merrell Dow Pharmaceuticals*, 509 U. S. 579 (113 SCt 2786, 125 LE2d 469) (1993)]; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. While there is inevitably some overlap among the basic

3

requirements—qualification, reliability, and helpfulness—they remain distinct concepts and the courts must take care not to conflate them.

*United States v. Frazier*, 387 F3d 1244, 1260 (III) (A) (11th Cir. 2004) (citations omitted).

In making this assessment, however, the "trial court may not exclude an otherwise sufficient expert opinion simply because it believes that the opinion is not — in its view — particularly strong or persuasive. The weight to be given to admissible expert testimony is a matter for the jury." *The Medical Center v. Bowden*, 348 Ga. App. 165, 170 (1) (820 SE2d 289) (2018) (citation and punctuation omitted). Stated another way,

> it is not the role of the [trial] court to make ultimate conclusions as to the persuasiveness of the proffered evidence. Indeed, . . . a [trial] court's gatekeeper role under *Daubert* is not intended to supplant the adversary system or the role of the jury. Quite the contrary, vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.

*Quiet Technology DC-8 v. Hurel-Dubois UK Ltd.*, 326 F3d 1333, 1341 (II) (A) (11th Cir. 2003) (citations and punctuation omitted).

We give broad deference to the trial court to fulfill this gatekeeper role. "Whether expert testimony ought to be admitted under OCGA § 24-7-702 is a question committed to the sound discretion of the trial court. We will not disturb the trial court's determination absent a manifest abuse of discretion." *Allen v. CFYC Constr., LLC*, __ Ga. App. __, __ (1) (__ SE2d__) (Case No. A20A0534, decided Apr. 20, 2020) (citation omitted).

2. *Analysis.*

With this law and these standards in mind, we turn to the expert opinion evidence at issue in this appeal. Dr. Gerald Gowitt, the chief medical examiner of DeKalb County, opined to a reasonable degree of medical certainty that Evans "would not have died with the conditions which took her life had she not become paralyzed in June 2015." He opined that her "paralysis resulted in many new medical conditions that she probably would not have developed had she not become paralyzed," and he described in detail those conditions and their relationship to Evans's paralysis in both his written expert report and his deposition testimony. He opined that those new conditions "stressed an already diseased heart most likely afflicted with hypertensive cardiovascular disease[.]"

The defendants challenge this expert evidence solely on the ground that Gowitt did not base his opinion "upon sufficient facts or data," one of the statutory requirements set forth in OCGA § 24-7-702 (b). They argue the trial court abused her discretion in allowing evidence of Gowitt's opinion because it was based on incomplete medical records — while Gowitt reviewed Evans's medical records from June 2015 forward, he did not review any of her medical records predating her June 2015 hospitalization. The defendants assert that those earlier medical records would have shown that Evans suffered from uncontrolled diabetes, which they argue could have contributed to her developing the post-paralysis medical conditions that led to her death. Gowitt, however, testified that Evans's preexisting conditions, of which he had been generally aware when he reached his opinion, did not change that opinion.

The trial court did not manifestly abuse her discretion in denying the defendants' motion to exclude this opinion evidence. The trial court's broad discretion afforded her considerable leeway in deciding how to assess the reliability of Gowitt's opinion. See *Smith v. CSX Transp.*, 343 Ga. App. 508, 512 (1) (b) (806 SE2d 890) (2017). See also Fed. R. Evid. 702, Advisory Committee's Notes (2000 Amendments) (sufficiency of expert's basis for opinion is part of opinion's ultimate

reliability, which is the "overarching requirement" of Rule 702).[1] Even if, as the defendants contend, "the expert's opinion was based upon inadequate knowledge, this does not mandate the exclusion of the opinion but, rather, presents a jury question as to the weight which should be assigned the opinion." *Toyo Tire North America Mfg. v. Davis*, 333 Ga. App. 211, 217 (2) (775 SE2d 796) (2015) (citation omitted), affirmed by *Toyo Tire North America Mfg.*, 299 Ga. at 155. An expert has "great liberty in determining the basis of his opinions[.]" *United States v. L. E. Cooke Co.*, 991 F2d 336, 342 (II) (A) (6th Cir. 1993) (citation omitted). "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Bonner v. ISP Technologies*, 259 F3d 924, 929 (II) (8th Cir. 2001) (citation omitted). See *Roberts v. Quick RX Drugs*, 343 Ga. App. 556, 566 (4) (b) (807 SE2d 476) (2017) (alleged errors in expert's testimony, which were based on his failure to consider certain information in reaching his opinion, could be addressed on cross-examination). See also *Rosenfeld v. Oceania Cruises*, 654 F3d 1190, 1193 (II) (11th Cir. 2011) ("in most cases, objections to the inadequacies of a

---

[1] "[A]lthough Advisory Committee Notes are not binding precedent and cannot change the plain meaning of the law or rules, they are highly persuasive[.]" *Almanza*, 304 Ga. at 559 (3) n. 6.

7

study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility") (citation and punctuation omitted); *Quiet Technology DC-8*, 326 F3d at 1345 (II) (C) (alleged error in underlying data to which an expert witness applied otherwise reliable methodology to reach opinion went to weight, rather than admissibility of the evidence; "[t]he identification of such [a] flaw[ ] in generally reliable scientific evidence is precisely the role of cross-examination"); *Smith v. Ford Motor Co.*, 215 F3d 713, 718 (II) (A) (7th Cir. 2000) ("[t]he soundness of the factual underpinnings of the expert's analysis [is a] matter[ ] to be determined by the trier of fact").

Nevertheless, citing Georgia authority decided under the old Evidence Code, the defendants argue that opinions regarding medical causation that are based on an incomplete medical history are "inherently unreliable" and thus inadmissible as a matter of law. See *American Southern Ins. Group v. Goldstein*, 291 Ga. App. 1 (660 SE2d 810) (2008); *Shiver v. Georgia & Florida Railnet*, 287 Ga. App. 828 (652 SE2d 819) (2007). Assuming without deciding that those decisions supported the bright-line rule proposed by the defendants under the old Evidence Code, they do not govern our interpretation of OCGA § 24-7-702, as explained above. See *Almanza*, 304 Ga. 355 (1).

We are not persuaded by the defendants' argument that affirming the trial court's decision in this case would render the "sufficient facts or data" requirement meaningless. A trial court may not admit an expert's opinion if it "is so fundamentally unsupported that it can offer no assistance to the jury[.]" *Bonner*, 259 F3d at 929-930 (II) (citation omitted). And there may be cases in which an expert's opinion would be fundamentally unsupported without consideration of a patient's full medical history. But this is not such a case. Gowitt was asked to opine only on the existence of a connection between Evans's paraplegia and her death. To reach his opinion, he reviewed Evans's medical records from the time she became paralyzed forward. He testified that this information was a sufficient basis for his opinion even though he knew that, when Evans became paralyzed, she had preexisting medical conditions including diabetes. Under these circumstances, the trial court did not err in ruling that a jury could consider Gowitt's opinion.

*Judgment affirmed. Doyle, P. J., and Hodges, J., concur.*