**WHOLE COURT**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 16, 2015**

# In the Court of Appeals of Georgia

A15A0201.  TOYO  TIRE  NORTH  AMERICA
  MANUFACTURING, INC. v. DAVIS et al.

MILLER, Judge.

Duron and Lynn Davis ("the Davises") filed suit against Toyo Tire North American Manufacturing, Inc. ("Toyo Tire"), asserting claims for trespass, continuing trespass, and nuisance, arising out of Toyo Tire's operation of a tire manufacturing facility in close proximity to real property that the Davises own and where they reside.[1] Toyo Tire filed a motion for summary judgment, which the trial court denied. The trial court certified its order for immediate review, and we granted Toyo Tire's

---

[1] The Davises stipulated that any claim based on an alleged diversion of the natural flow of surface water on their property was barred by the statute of limitation, and the trial court granted summary judgment for Toyo Tire on that issue.

application for interlocutory review. On appeal, Toyo Tire contends that it was entitled to summary judgment. For the reasons that follow, we affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. O appeal from the denial or grant of summary judgment, the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Punctuation and footnotes omitted.) *Taylor v. Campbell*, 320 Ga. App. 362 (739 SE2d 801) (2013).

So viewed, the evidence shows that the Davises own and reside on property located at the intersection of U. S. Highway 411 and Shinall Road in Bartow County (the "Property"). The Davises have lived on the Property since 1995. The Toyo Tire manufacturing facility at issue is located on the other side of Highway 411 from the Property, 1000 feet or less from the Davises' house.

Construction on the facility began in 2004 and was completed in 2005. Toyo Tire's facility began operating in January 2006. The Davises subsequently hired counsel, who sent a letter to Toyo Tire on the Davises' behalf on October 25, 2007. The Davises' counsel enclosed a draft complaint asserting claims for trespass, nuisance, and negligence but stated that the Davises wished to pursue an amicable

2

resolution of the matter and, as such, were requesting that Toyo Tire purchase their home.

The Davises filed their complaint in the instant action on February 27, 2013. The complaint alleges that, since Toyo Tire began operating the manufacturing facility, the Davises have been subjected to: constant noise from, among other sources, truck traffic in and out of the facility, backup alarms on vehicles at the facility, and the facility itself; lights from the truck traffic, equipment and the facility itself; black dust that invades the Property, believed to be carbon black; foul odors from the facility; drastically increased traffic on Highway 411 and Shinall Road from trucks entering and leaving the facility and employees going to and from work; and the unsightliness of the facility.

The record reflects that Toyo Tire's operations have expanded over time. Toyo Tire's president and plant manager testified that the Toyo Tire facility and operations have grown in several phases. The initial phase, Phase I, was completed in October 2006, and at that time, the plant was producing approximately 3000 tires a day and approximately 90,000 per month. In 2008, the facility reached a production level of approximately 4500 tires a day and approximately 135,000 per month after Phase II, an internal expansion involving the addition of equipment, was complete. By the time

3

a Phase III expansion was completed in the summer of 2011, the factory was producing approximately 13,500 tires a day, 400,000 tires per month, and 4.7 million tires per year. Between 2006 and 2011, the number of employees at the facility increased from approximately 350 or 400 to 1000. At the time of the plant manager's deposition, March 10, 2014, Toyo Tire had initiated a Phase IV expansion that was expected to bring production to between 6.7 to 7 million tires per year and the number of employees at the factory to roughly 1450.

1. Toyo Tires contends that all of the Davises claims are barred by the four-year statute of limitation OCGA § 9-3-30. We disagree.

The resolution of this issue is controlled by the Georgia Supreme Court's decision in *Cox v. Cambridge Square Towne Houses, Inc*., 239 Ga. 127 (236 SE2d 73) (1977). In *Cox*, a storm drain system was installed in an apartment complex owned by the defendant. Id. at 127. More than four years later the plaintiff, a neighboring property owner, filed a trespass action against the apartment complex owner, alleging that the drain system had increased the flow of surface waters across his land. Id. The trial court granted summary judgment for the defendant on the basis that the action was barred by the four-year statute of limitation applicable to actions

4

for trespass upon or damage to realty. Id. Relying on the Restatement of Torts, our Supreme Court reversed. Id. at 129.

The Supreme Court first quoted Section 930 of the Restatement, which addresses damages for future invasions on land, as follows:

> (1) Where, by the maintenance of a structure on his own land or by acts and operations thereon, a person causes continuing or recurrent tortious invasions of the land of another, the other is entitled to recover for future [invasions] if, and only if, it appears that (a) the situation will continue indefinitely and (b) it is incident to (i) an enterprise affected with a public interest, the operation of which as presently operated will not be enjoined, or (ii) other enterprises if the injured person so elects.

Id. at 128, citing Restatement of Torts § 930. It went on to discuss comment d to Section 899.[2] Id. Comment d begins by explaining that "where there is a series of harms caused by the existence of a structure or by the operation of a business outside the land, the time when the statute of limitations begins to run depends upon the rules . . . stated in § 930." Restatement of Torts § 899, cmt. d. Comment d first explains the accrual rules that apply "[i]n cases where a public utility or governmental agency

---

[2] That section sets forth the general principle that "[a] cause of action for a tort may be barred through lapse of time because of the provisions of the statute of limitations." Restatement of Torts § 899.

erects a harmful structure . . . or conducts a harmful activity, . . . and the interference with the plaintiff's interests is not abatable by a proceeding in equity." Restatement of Torts § 899 cmt. d. The portion of comment d upon which the Supreme Court relied in *Cox*, however, concerns "other cases when there is a series of continuing harms." The comment explains that in these other cases, "the plaintiff, under the rule[] stated in . . . § 930 has an election to recover or is permitted to recover damages only for harm to the use of the land up to the time of trial. In cases of this type, the statute does not run from the time of the first harm except as to the harm then caused." Id.; *Cox*, supra, 239 Ga. at 128. The Supreme Court in *Cox* found that it clearly appeared from the record that the situation giving rise to the alleged interference would continue indefinitely such that the plaintiff could elect whether to sue for damages incurred in the past four years or seek all damages, past and prospective. *Cox*, supra, 239 Ga. at 129. It then construed the relevant portion of comment d, set forth above, as providing that in either event, the statute of limitation "does not preclude recovery for any damages save those which were suffered more than 4 years prior to the filing of the suit." Id.

The same Restatement rules the Supreme Court relied upon in *Cox* have been carried forward in the Restatement (Second) of Torts, which the Supreme Court has

more recently used to guide its decisions on statute of limitation issues in nuisance cases. See *Oglethorpe Power Corp. v. Forrister*, 289 Ga. 331, 333-337 (2), (3) (711 SE2d 641) (2011); *City of Atlanta v. Kleber*, 285 Ga. 413, 417 (1) (677 SE2d 134) (2009).[3]

Here, the evidence establishes that the Toyo Tire facility is continuing to grow and expand, and while Toyo Tire claims that certain invasions alleged by the Davises cannot be proved or are not actionable, it does not generally dispute that the Davises' allegations relate to invasions that are enduring in character and not readily alterable. See Restatement (Second) of Torts § 930, cmt. b. ("When the private structure or enterprise that is producing the invasions is substantial and relatively enduring in character and not readily alterable so as to avoid future injury, its maintenance or operation ordinarily indicates that the owner intends to continue indefinitely to cause invasions upon the neighboring land."). Applying *Cox*, we conclude that the "permanence" of the invasions alleged here would entitle the Davises to elect to recover all available past and prospective damages but that the Davises' claims are

---

[3] Section 930 has been reworded in the interest of clarity. See Restatement (Second) of Torts § 930, reporter's note.

not time-barred except as to damages for past invasions occurring more than four years before they filed their complaint.

Contrary to Toyo Tire's arguments, *Oglethorpe Power*, supra, and *Kleber*, supra, do not require a different result. In each of those cases, the Supreme Court applied the analytical framework the Restatement (Second) of Torts provides for determining when a nuisance claim accrues against an entity providing an essential public service, such as electricity or railroad transportation. For example, both cases relied upon comment c to Section 930, which explains when a nuisance caused by such an entity is considered non-abatable. See *Oglethorpe Power*, supra, 289 Ga. at 334 (2); *Kleber*, supra, 285 Ga. at 417 (1). That comment states:

> Damage to neighboring landowners is frequently incident to the construction and operation of *establishments employed in necessary public service*, which nominally have the right of taking land by eminent domain. A railway embankment with an inadequate culvert diverts water upon nearby land; a municipal electric plant sends smoke and fumes into homes and factories; a city sewage disposal system pollutes a stream to the injury of bordering landowners. If the damage results from some minor feature of construction or management, so that it could be averted at slight expense, the normal remedy of successive actions for past invasions or relief by injunction would alone be available, as is also true if the harm results from an improper and unnecessary method of operation. But if the invasions are caused by some substantial and

8

relatively enduring feature of the plan of construction or from an essential method of operation, then it will usually not be abatable by injunction and the desirability of granting the injured person complete compensation for past and future invasions is apparent.

(Emphasis supplied.) Restatement (Second) of Torts § 930, cmt. c. In *Oglethorpe Power*, supra, the Supreme Court also relied on the portion of comment d to Section 899, which states, among things:

In cases in which a *public utility* or *governmental agency* erects a harmful structure such as a bridge or conducts a harmful activity such as opening a sewer that pollutes a stream and the interference with the plaintiff's interests is not abatable by a proceeding in equity, the statutory period normally begins when the structure is completed or the activity is begun.

(Emphasis supplied.) Restatement (Second) of Torts § 899, cmt. d.; *Oglethorpe Power*, supra, 289 Ga. at 333 (2). *Cox*, supra, by contrast, sets forth the statute of limitation analysis we must apply when an alleged nuisance is created by a private entity that is not engaged in providing a necessary public service. See *Provident Mut. Life Ins. Co. of Philadelphia v. City of Atlanta*, 938 F. Supp. 829, 834 (N.D. Ga. 1995).

9

Thus, under *Cox*, the "permanence" of the alleged invasions entitled the Davises to recover all available past and prospective damages, and that their claims are not time-barred except as to damages for past invasions occurring more than four years before they filed their complaint.[4]

2. Toyo Tires next contends the Davises failed to show that the alleged nuisances and trespasses proximately caused their property to decrease in value. We disagree.

> Causation is an essential element of nuisance, trespass, and negligence claims. To establish proximate cause, a plaintiff must show a legally attributable causal connection between the defendant's conduct and the alleged injury. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result.

(Footnote omitted.) *Alexander v. Hulsey Environmental Svcs., Inc.*, 306 Ga. App. 459, 462 (3) (702 SE2d 435) (2010). "The existence of proximate cause is a question of fact for the jury, except in palpable, clear, and indisputable cases." (Punctuation and

---

[4] Toyo Tire further argues for the first time on appeal that it may rely on *Oglethorpe Power*, supra, and *Kleber*, supra, because it qualifies as an "enterprise affected with a public interest" under Restatement (Second) of Torts § 930. We need not consider arguments raised for the first time on appeal. See *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002).

footnote omitted.) *Sprayberry Crossing Partnership v. Phenix Supply Co.*, 274 Ga. App. 364, 365 (1) (617 SE2d 622) (2005).

Here, the Davises submitted the opinion testimony of a property appraiser familiar with properties in Bartow County. The expert appraiser opined that the fair market value of the Property would be $280,000 if not located directly across the street from the Toyo Tire facility, and the property's value depreciated between 40 and 50 percent because of its proximity to the Toyo Tire facility. The appraiser also testified that, out of the total reduction in value, between 15 to 25 percent was attributable to particulate emissions contributed in the reduction in value.

Toyo Tire does not challenge the appraiser's qualifications, but rather argues that the appraiser did not specifically testify that any diminution in value was caused by the alleged nuisances and trespasses. Toyo Tire also argues that the appraiser expert's opinion was without foundation and, therefore, lacked probative value.

The appraiser testified, however, that he was charged with determining the diminution in value given the communicated characteristics of the Toyo Tire facility's operations, including the round-the-clock shifts, heavy traffic, and the light and noise from the facility. While the appraiser did not independently analyze the amount of noise, light, or pollution affecting the Property, he could base his opinion on the

information that was communicated to him. See OCGA § 24-7-703 ("The facts or data in the particular proceeding upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing."); see also *Humphrey v. Morrow*, 289 Ga. 864, 872 (II) (B) (1) (717 SE2d 168) (2011) (an expert witness may rely on the statements of others in forming his or her expert opinion).

Moreover, notwithstanding Toyo Tire's challenges to the expert appraiser's basis for determining the diminution in value, this presents no basis for excluding the expert's opinion on summary judgment, because any deficiencies in the expert's opinion go to the weight and credibility of his testimony.

> [Even] if the expert's opinion was based upon inadequate knowledge, this does not mandate the exclusion of the opinion but, rather, presents a jury question as to the weight which should be assigned the opinion. If it be developed that the opinion is based on inadequate knowledge, this goes to the credibility of the witness rather than to the admissibility of the evidence. The weight given to expert testimony in negligence cases is for the trier of fact who can, but is not required to give it controlling influence.

(Citations and punctuation omitted.) *Layfield v. Dept. of Transp.*, 280 Ga. 848, 851 (1) (632 SE2d 135) (2006) (reversing this Court's affirmance of summary judgment

12

to the movant because this Court incorrectly determined that the plaintiff's expert's testimony lacked sufficient information to reach a probative opinion). Furthermore, "[t]he appropriate standard for assessing the admissibility of the opinion of an expert is not whether it is speculative or conjectural to some degree, but whether it is wholly so." *Ga. Dept. of Transp. v. Miller*, 300 Ga. App. 857, 862 (2) (b) (686 SE2d 455) (2009).

Given the expert witness's testimony that he considered the characteristics of Toyo Tire's facility that give rise to the alleged nuisance and trespass claims, his opinion on the diminution of the value of the Property was not wholly speculative. Therefore, the Davises, as the nonmoving parties, presented sufficient evidence to defeat Toyo Tire's motion for summary judgment. See *Layfield*, supra, 280 Ga. at 850 (1) (in the summary judgment context, a nonmoving party is "not required to produce evidence demanding judgment [in their favor], but only to present evidence which raises a material issue of fact.") (citation omitted).

3. Toyo Tire contends that it is entitled to summary judgment on the Davises' claims to the extent they are premised on the Property's exposure to carbon black emanating from Toyo Tire's facility because the Davises have no proof that black dust on their Property came from Toyo Tire or is carbon black. We disagree.

13

It is undisputed that carbon black is a filler and reinforcement material used in large quantities in the tire-manufacturing process at the Toyo Tire facility.[5] For example, in December 2012, 3,999,563 pounds of carbon black were used at the Toyo Tire facility. It is also undisputed that Toyo Tire has an air quality permit from the Georgia Department of Natural Resources ("DNR") permitting the discharge of particulate matter into the environment. There is evidence in the record that Toyo Tire uses dust collection systems on the mixing lines where carbon black is introduced into the mixing process and that an outside company performed an evaluation of the particulate emissions from three dust collectors in February 2008. While the evaluation demonstrated that the particulate emissions from the dust collectors were below permitted limits, it also provides some evidence that carbon black in at least some amount is emitted in the normal course of operations at the Toyo Tire facility. The record also includes January 30, 2013, July 28, 2011, and January 29, 2008 reports in which Toyo Tire informed the DNR of filter ruptures resulting in brief releases of carbon black dust into the atmosphere.

---

[5] The plant manager explained that carbon black is a soot-like material that is manufactured from the carbon black oil that is produced in the oil refining process.

14

Here, the Davises testified that they began to observe black dust on the Property after the Toyo Tire facility began operating. Duron Davis recalled first observing the dust during a family gathering in or around the summer of 2007. He testified that his grandchildren were running in the grass, and the adults noticed that everywhere the children ran they were kicking up black dust. The children's shoes were covered in black and were difficult to clean. Lynn Davis recalled the same event. Duron Davis testified that he sometimes buys and sells motor homes and that if he left one on the Property for long, it would become black and would be difficult to clean. He also recalled pulling an apple off of one of his apple trees that was completely black and that his air conditioning system became clogged with a sticky black substance. Lynn Davis testified that the black dust is on anything outside that you wipe down.

Given the evidence of Toyo Tire's use and emission of carbon black, the very close proximity of the Davises' home to Toyo Tire's facility, and the Davises' testimony about observing the black dust after the facility began operations, we conclude that a fact issue exists as to whether the black dust the Davises have observed emanates from the Toyo Tire facility and is carbon black.

15

4. Toyo Tire next contends that the Davises may not recover damages for both diminution in value to their property and personal discomfort and annoyance. It is well settled, however, that a plaintiff in an action for nuisance may recover for both damage to person and damage to property. See *City of Atlanta v. Hofrichter/Stiakakis*, 291 Ga. App. 883, 890 (4) (663 SE2d 379) (2008); see also OCGA § 41-1-4. Moreover, this argument is premature because it presumes that the jury will award the Davises the damages it seeks on both claims. See *Edwards Bros., Inc. v. Overdrive Logistics, Inc.*, 260 Ga. App. 222, 224 (2) (581 SE2d 570) (2003).

5. Toyo Tire, citing *Oklejas v. Williams*, 165 Ga. App. 585 (302 SE2d 110) (1983), contends that it was entitled to summary judgment in its favor to the extent that the Davises' nuisance claim is based on the alleged unsightliness of the Toyo Tire facility. We held in *Oklejas* that the trial court should have granted the defendant's motion for directed verdict on the plaintiff's nuisance claim that was based on the construction of an unsightly wall in between the parties' properties. 165 Ga. App. at 586 (1). We recited the principle that "the unsightliness of adjacent property alone, tending to devalue the adjoining property, is not such inconvenience as to amount to a nuisance for which an injunction will lie or damages recovered." (Citations and punctuation omitted.) Id. *Oklejas* is inapposite, however, as the

16

unsightliness of the Toyo Tire facility is only one aspect of the nuisance the facility allegedly has created. See *Segars*, supra, 255 Ga. App. at 295 (1) (distinguishing *Oklejas* and concluding that unsightliness of roof on house next to plaintiff's home was among evidence supporting jury's finding that house constituted nuisance); see also *Sowers v. Forest Hills Subdivision*, 294 P3d 427, 432 n.5 (Nev. 2013) (aesthetics-based complaints can be one of several factors to consider in determining the presence of a nuisance). This enumeration of error is without merit.

6. Similarly, Toyo Tire contends that the Davises cannot base their nuisance claim on an alleged increase in traffic caused by the Toyo Tire facility. We disagree.

Even if a nuisance claim based on increased traffic alone would not be viable, the Davises' nuisance claim identifies increased traffic as only one of the circumstances creating a nuisance. Compare *Goddard v. Irby*, 255 Ga. 47, 48 (3) (335 SE2d 286) (1985) (trial court did not err in granting summary judgment for defendant on nuisance claim when plaintiff's only assertion of nuisance was that construction of the townhouses on neighboring lot would lead to an increase in traffic congestion in front of his property) and *Prairie Hills Water and Development Co. v. Gross*, 653 NW2d 745, 752 (S.D. 2002) (trial court authorized to conclude that noise, dust and large vehicle traffic associated with sandblasting business in residential neighborhood

17

constituted nuisance); *Fugazzoto v. Brookwood One*, 325 So2d 161, 162 (Ala. 1976) (increased traffic may be one element of a nuisance action).

7. Since the Davises concede on appeal that their trespass claim is premised solely on the alleged invasion of their property by black dust, Toyo Tire's remaining enumeration of error is moot.

In sum, the trial court properly denied Toyo Tire's motion for summary judgment because the Davises presented sufficient evidence to demonstrate that they had viable claims. Accordingly, we affirm.

*Judgment affirmed. Barnes, P. J., Ellington, P. J., and McFadden, J., concur. Dillard, J., concurs in judgment only. Branch, J., concurs fully in all but Division 2 and dissents as to Division 2. Andrews, P.J., concurs in judgment only in all but Division 2 and dissents in Division 2.*

A15A0201.        TOYO    TIRE    NORTH    AMERICA
MANUFACTURING, INC. v. DURON DAVIS et al.


ANDREWS, Presiding Judge, dissenting in part.

I respectfully dissent to Division 2 because Plaintiffs' expert appraiser has not offered an opinion that even addresses whether Plaintiffs' property has suffered a diminution in market value caused by the alleged invasions at issue in this case and Plaintiffs have no other evidence of diminution in market value.

Plaintiffs' appraiser testified that the fair market value of the Property would be $280,000 if the Toyo Tire facility were not located directly across the street but that its proximity to the Toyo Tire facility caused a market value depreciation of between 40 and 50 percent. The expert explained that in reaching his valuation conclusion, he relied in part on a paired sales analysis, which involved looking for pairs of sales of two similar houses, one of which was located in very close proximity to an industrial facility in or near Bartow County and the other far away from it but still in the same general market area. He ultimately relied on three paired sales, which included pairs of houses located close to and far from Dobbins Air Force Base, a

Budweiser plant, and a Shaw plant. The expert testified that the purpose of the analysis was to measure whether there was "any diminution in value to a residential property from being close to industry or a plant or something like that." He stated that the paired sales analysis showed that the closer a house is to an industry, the greater the depreciation. Based on that analysis and considering the general agricultural and residential character of the area, the expert testified that 35 to 40 percent of the reduction in value he found in this case comes from the mere presence of the Toyo Tire facility across the street from Plaintiffs' home. The expert testified that the emission of particulates could cause a further reduction in value of up to 50 percent.

The expert admitted that in reaching his conclusions he did not consider the amount of light coming on to the Property from the Toyo Tire facility or the amount of traffic, amount of noise, or any particular odors Plaintiffs were experiencing. He testified that he had never seen the complaint in this case or talked to Plaintiffs, and while he was aware of the *general* nature of the disturbances Plaintiffs were complaining about, he admitted, among other things, that he had no idea what kind of noise Plaintiffs were complaining about and could not recall with specificity anything Plaintiffs' counsel had communicated to him about the odors affecting

2

Plaintiffs. The expert did not visit any of the properties involved in his paired sales analysis, and, apart from noise and problems with airplanes dumping fuel from the air near Dobbins Air Force Base, he could not identify any factors other than proximity that would cause a reduction in value in properties close to the other industrial sites involved in his analysis. With respect to his opinion that particulate emissions from Toyo Tire could cause a further reduction in the Property's value, the expert stated that he was relying on his experience in another case determining the depreciation in value to properties exposed to concrete dust from a nearby concrete recycling plant. But he testified that he had not done any specific analysis regarding the alleged particulate on the Property, stating only that "if in fact this is an analogous situation [to the case involving concrete dust] . . . there's a reasonable probability it will sell . . . for 15 to 25 percent less."

While Plaintiffs' appraiser's valuation may validly reflect the reduction of value that may result from a residential property's proximity to an industrial site *generally*, that is not an issue presented in this case. Rather, the issue presented is whether the specific invasions allegedly caused by the Toyo Tire facility and its operations proximately caused a diminution in market value. Plaintiffs' appraiser admittedly did not gather any evidence about the specific invasions involved here or

3

conduct any analysis of whether the other industrial sites in his paired sales analysis involved similar situations. Although Plaintiffs' appraiser has prior experience in a different case involving concrete dust, he admitted that he simply applied the same reduction in value finding from that case to Plaintiffs's Property based on a hypothetical assumption that the situations were similar. Given the methodology involved in his appraisal, any opinion that Plaintiffs' appraiser were to offer that the prospect of future invasions caused by the Toyo Tire facility has reduced the value of Plaintiffs' property would be speculative and without foundation or probative value. See *Colonial Pipeline Co. v. Williams*, 206 Ga. App. 303, 305 (425 SE2d 380) (1992). Likewise, to allow a jury to base a damages award on his valuation opinions would be to invite an exercise in speculation, since the jury would be left to guesswork to determine what portion, if any, of the diminution in value he found could be attributed to the tortious conduct at issue.

> Causation is an essential element of nuisance [and] trespass claims . . . A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to grant summary judgment for the defendant.

(Footnotes and punctuation omitted.) *Lore v. Suwanee Creek Homeowners Assn.*, 305 Ga. App. 165, 172 (2) (699 SE2d 332) (2010). I would hold that the trial court erred in failing to grant partial summary judgment for Toyo Tire on the issue of Plaintiffs' right to recover damages for prospective diminution in market value. I am authorized to state that Judge Branch concurs in this dissent.