In the Supreme Court of Georgia

Decided:   June 6, 2016

S15G1804. TOYO TIRE NORTH AMERICA MANUFACTURING INC. v. DAVIS et al.

NAHMIAS, Justice.

Toyo Tire North America Manufacturing Inc. operates a large tire manufacturing and distribution facility about 625 feet from the home of Lynn and Duron Davis.  The Davises sued Toyo Tire, alleging that its facility is a nuisance and has resulted in a trespass, causing them discomfort and annoyance and diminishing their property's value.  The trial court denied Toyo Tire's motion for summary judgment; the Court of Appeals affirmed that order; and we granted certiorari to address two issues.

First, we consider Toyo Tire's argument that the Davises presented insufficient evidence, at the summary judgment stage of the case, to show that the decrease in their property value was proximately caused by the alleged nuisance and trespass.  Applying the standards used in reviewing summary judgment motions, we reject this argument.  Second, we consider Toyo Tire's

argument that even if the Davises can establish causation, they cannot recover damages both for their discomfort and annoyance and for the diminution in their property value, because that would constitute an impermissible double recovery. Following a long line of this Court's precedents as well as several cases from the Court of Appeals (except one case that we disapprove), we conclude that the past discomfort and annoyance caused by a continuing nuisance and the diminution in the property's market value resulting from the expectation of continuing discomfort and annoyance constitute two separate injuries, and the Davises, who both occupy and own the property, may potentially recover damages for both injuries. Accordingly, we affirm.

1. Since 1995, the Davises have resided in a house they now own located on four acres in an area zoned for low-density residential or agricultural use at the intersection of U.S. Highway 411 and Shinall Road in Bartow County. In 2004, the property across the highway from the Davises was re-zoned for heavy industrial use, and Toyo Tire began building a manufacturing and distribution facility on about 260 acres across the road from the Davises. Since the facility began operating in January 2006, it has undergone three expansions. Upon completion of the first phase in October 2006, the facility had about 400

employees and was producing 3,000 tires a day. In 2008, the second phase was completed, and the facility had about 570 employees and produced 4,500 tires per day. In mid-2011, the third phase was completed, and the number of employees increased to about 1,000 and the number of tires per day increased to 13,500. In March 2014, when the plant manager was deposed for this case, the facility was undergoing its fourth expansion, which was expected to increase the number of employees to 1,450 and the number of tires per day to 19,178. Phases three and four both included increasing the size of the facility. Toyo Tire operates around the clock, with two 12-hour shifts every day.

On October 25, 2007, the Davises sent a letter to Toyo Tire through their counsel, asserting that they planned to file a lawsuit for trespass, nuisance, and negligence, and requesting that Toyo Tire purchase their home (as it had done with the two properties next door to the Davises). Toyo Tire declined. On February 27, 2013, the Davises filed a complaint in Bartow County Superior Court alleging that the noise, lights, odors, black dust (alleged to be carbon black), and increased traffic from the facility, as well as its unsightliness, constitute a nuisance; they also alleged that the black dust emitted by the facility

3

constitutes a trespass.[1]  The Davises requested damages for Toyo Tire's maintenance of a nuisance, damages in nuisance for the diminution in fair market value of their property, and damages for trespass.

During discovery, the Davises were deposed, and they explained how Toyo Tire's operations, including the loud noises, bright lights, odors, and black dust emissions from the facility, its equipment, and frequent truck deliveries, as well as the increased traffic from both trucks and employees, interfered with their use and enjoyment of the property and with their daily lives.  They testified, for example, that their sleep is interrupted by the light and noise from the facility, and that they wear masks when they go outside and can no longer use their large yard for family gatherings because of the odors emitted from the facility, the danger from the increased traffic, and the carbon black that settles in their yard.  Bruce Penn, a real estate appraisal expert hired by the Davises, was also deposed.  He testified about appraisals done on their property, which indicated that its value without the Toyo Tire plant would be $280,000.  He also

[1] In addition, the Davises alleged that the diversion of water flow caused by the facility was a trespass, but at the hearing on Toyo Tire's motion for summary judgment, the Davises conceded that this claim was barred by the statute of limitation, and the trial court entered summary judgment against them on that issue.

4

testified about his depreciation analysis, which led him to conclude that the nuisance of the Toyo Tire facility had decreased the value of the Davises' property by about 35 to 40%, with the black dust as a trespass decreasing the value by an additional 10 to 15%.

On May 23, 2014, Toyo Tire filed a motion for summary judgment, arguing, among other things, that the Davises failed to prove that the specific interferences they alleged had caused their property value to decrease and that, under Georgia law, the Davises cannot recover both for diminution of property value and for discomfort and annoyance caused by a nuisance. Toyo Tire did not argue that Penn's expert testimony was inadmissible or seek to exclude it under OCGA § 24-7-702. After a hearing, the trial court denied summary judgment, concluding that material issues of fact still exist in the case. The court certified the order for immediate review, and the Court of Appeals granted Toyo Tire's application for interlocutory review and affirmed the trial court in a partially divided seven-judge opinion. See Toyo Tire North Am. Mfg., Inc. v. Davis, 333 Ga. App. 211 (775 SE2d 796) (2015).

Division 2 of the majority opinion held that the Davises had presented sufficient evidence that the alleged nuisance and trespass caused their property

5

to depreciate to survive summary judgment, because Penn's expert testimony on that issue was properly considered even though he had not examined the Davises' property or taken into account the precise allegations made by the Davises. See id. at 216-217. In Division 4, the majority opinion rejected Toyo Tire's argument that the Davises may not recover damages for both diminution in property value and personal discomfort and annoyance. Judge Dillard joined the majority opinion in judgment only. Judge Branch concurred fully in all but Division 2. Presiding Judge Andrews, joined by Judge Branch, dissented as to Division 2, and he concurred in the rest of the majority opinion in judgment only.

We then granted Toyo Tires's petition for a writ of certiorari, directing the parties to address whether the Court of Appeals erred in concluding (1) that an issue of fact remained as to whether the alleged nuisance and trespass proximately caused the Davises' property value to decrease and (2) that the Davises could potentially recover in nuisance both for diminution in their property value and for their personal discomfort and annoyance. As explained below, we answer both questions in the negative and affirm the Court of

6

Appeals judgment.[2]

2.     Toyo Tire first argues that the Davises have failed to present evidence sufficient to prove that the nuisance and trespass alleged caused a diminution in their property's value, because the Davises' appraisal expert, Bruce Penn, did not consider the specific interferences alleged by the Davises but rather looked at depreciation caused by "industries" in general. "Causation is an essential element of nuisance, trespass, and negligence claims. To establish proximate cause, a plaintiff must show a legally attributable causal connection between the defendant's conduct and the alleged injury." Toyo Tire, 333 Ga. App. at 216 (citing Alexander v. Hulsey Environmental Svcs., Inc., 306 Ga. App. 459, 462 (702 SE2d 435) (2010)).

In his deposition, Penn explained that he had over 30 years of experience as a real estate appraiser, had done several hundred appraisals in Bartow County, and was certified in the top tier of licensing for appraising in Georgia. He

---

[2] Toyo Tire also argued in its summary judgment motion that all of the Davises' claims are barred by the statute of limitation, that the Davises failed to show the physical intrusion element of trespass, that increased traffic and facility unsightliness cannot be the basis for nuisance claims, and that there is no evidence Toyo Tire caused the black dust. The trial court and then the Court of Appeals rejected all of these arguments. Toyo Tire's petition for certiorari asked this Court to review those issues too, but we did not request or receive briefing on them, and we render no opinion regarding them.

testified that in his expert opinion, the Toyo Tire facility and its black dust emissions caused the Davises' property value to decrease by 50% – 35 to 40% due to the nuisance and 10 to 15% due to the black dust trespass. Penn arrived at this conclusion primarily by conducting a "paired sales" analysis, in which he compared the sales prices of three pairs of houses. One house in each pair was very close to an industrial facility in the vicinity of Bartow County, and the other was far away but still in the same general market area; the houses in each pair were otherwise similar. The three industrial facilities used were the Dobbins Air Reserve base, the Shaw plant, and the Budweiser plant. He based the additional decrease in value resulting from the black dust trespass on research he previously conducted to determine the decrease in the value of homes affected by concrete dust from a concrete recycling plant in west Atlanta. He also relied generally on other work he had done during his career examining the effects of industrial sites on residential property values.

The dissent in the Court of Appeals focused on several aspects of Penn's methodology that call into genuine question its validity and reliability, including Penn's admission that he "did not gather any evidence about the specific invasions involved here or conduct any analysis of whether the other industrial

8

sites in his paired sales analysis involved similar situations." Toyo Tire, 333 Ga. App. at 221 (Andrews, P.J., dissenting in part). It is appropriate to question why an expert of this type did not actually visit the industrial facilities and residential properties that he was comparing to better determine whether the interferences caused by an Air Force base, a carpet factory, and a beer-brewing facility are really similar in type and degree to the interferences allegedly caused by a tire manufacturing and distribution facility (or by each other). The flaw in the dissent's analysis, however, is that these potential deficiencies in Penn's methodology relate to whether his testimony should be admissible as expert opinion (and if so, what weight the fact-finder should give his testimony), not whether his opinions provide the evidence necessary on a motion for summary judgment to show causation. At this point in the case, only the latter question is properly presented for decision.

As then-Judge Blackwell explained in An v. Active Pest Control South, Inc., 313 Ga. App. 110 (720 SE2d 222) (2011):

> In some cases, we suppose, the admissibility or inadmissibility of evidence offered in support of, or in opposition to, a motion for summary judgment is so obvious that we properly can decide on appeal whether that evidence should have been considered, even without the court below having addressed it. But we must be

9

cautious about deciding questions of admissibility – including questions of the admissibility of expert opinions – upon which a trial court has not ruled. After all, questions of admissibility generally are committed to the sound discretion of the trial courts, and questions of the admissibility of expert opinions . . . are no different.

Id. at 114-115. Toyo Tire has not challenged the admissibility of Penn's expert testimony in the trial court, and that court therefore has not considered whether Penn's methodology meets the requirements for expert testimony laid out in OCGA §§ 24-7-702 and 24-7-703.[3] See also Daubert v. Merrell Dow

---

[3] OCGA § 24-7-702 says in relevant part:

(a) . . . [T]he provisions of this Code section shall apply in all civil proceedings. The opinion of a witness qualified as an expert under this Code section may be given on the facts as proved by other witnesses.
(b) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if:
    (1) The testimony is based upon sufficient facts or data;
    (2) The testimony is the product of reliable principles and methods; and
    (3) The witness has applied the principles and methods reliably to the facts of the case which have been or will be admitted into evidence before the trier of fact. . . .
(d) Upon motion of a party, the court may hold a pretrial hearing to determine whether the witness qualifies as an expert and whether the expert's testimony satisfies the requirements of subsections (a) and (b) of this Code section. Such hearing and ruling shall be completed no later than the final pretrial conference contemplated under Code Section 9-11-16. . . .
(f) It is the intent of the legislature that, in all civil proceedings, the courts of the State of Georgia not be viewed as open to expert evidence that would not be admissible in other states. Therefore, in interpreting and applying this Code section, the courts of this state may draw from the opinions of the United States Supreme Court in Daubert

Pharmaceuticals, Inc., 509 U.S. 579, 589 (113 SCt 2786, 125 LE2d 469) (1993).

An appellate court should not conduct the analysis of Penn's methodology in the first instance. See An, 313 Ga. App. at 111 ("Whether the opinions of the experts are admissible . . . is something that must be determined in the first instance by the court below, exercising its discretion under [what is now OCGA § 24-7-702]."). See also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (119 SCt 1167, 143 LE2d 238) (1999) (explaining that "Rule 702 imposes a special obligation upon a *trial judge"* to ensure that expert testimony is relevant and reliable (emphasis added)). As this Court emphasized in HNTB Georgia, Inc. v. Hamilton-King, 287 Ga. 641 (697 SE2d 770) (2010),

> [W]hether "'a witness is qualified to render an opinion as an expert
> is a legal determination for the trial court and will not be disturbed

v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); General Electric Co. v. Joiner, 522 U.S. 136 (1997); Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137 (1999); and other cases in federal courts applying the standards announced by the United States Supreme Court in these cases.

OCGA § 24-7-703 says, in relevant part:

The facts or data in the particular proceeding upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, such facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.

These provisions of Georgia's new Evidence Code carry forward former OCGA § 24-9-67.1.

11

absent a manifest abuse of discretion.'" . . . In determining the admissibility of expert testimony, the trial court acts as a gatekeeper, assessing both the witness' qualifications to testify in a particular area of expertise and the relevancy and reliability of the proffered testimony. . . . There are many different kinds of experts and many different kinds of expertise, and it follows that the test of reliability is a flexible one, the specific factors "neither necessarily nor exclusively applying to all experts in every case."

Id. at 642-643 (citations omitted).

Consequently, "we will consider only whether the record as we now find it – including the opinions of the expert[] – is enough to get [the Davises] past summary judgment." An, 313 Ga. App. at 116. And because we are reviewing a motion for summary judgment, we must

construe the evidence most favorably towards the nonmoving party, who is given the benefit of all reasonable doubts and possible inferences. The party opposing summary judgment is not required to produce evidence demanding judgment for it, but is only required to present evidence that raises a genuine issue of material fact. Our review of the grant or denial of a motion for summary judgment is de novo.

Nguyen v. Southwestern Emergency Physicians, P.C., 298 Ga. 75, 82 (779 SE2d 334) (2015) (quotation marks and citation omitted).

Toyo Tire maintains that even if Penn's testimony is admissible, the Davises have failed to show causation. We disagree. Although Penn

12

acknowledged in his deposition that he had not visited the Davises' property or considered separately each specific claim of interference the Davises have made, he also testified that he was made generally aware of the characteristics of the Toyo Tire facility, including its "round-the-clock shifts" and the "middle of the night traffic," and interferences resulting from those characteristics, such as increased traffic, lights, noise, and emissions; he explained his belief that these are common byproducts of industry.[4] Viewed in its full context and with the charity required in the summary judgment setting, Penn's conclusion was not that Toyo Tire's mere presence near the Davises' property was a nuisance, but that the facility's industrial operations (which he would expect to include things like odors, light, noise, and traffic) caused the value of the Davises' adjacent property to diminish.[5]

---

[4] Toyo Tire complains that Penn relied on facts conveyed to him by the Davises' attorney, but an expert may provide an opinion based on facts and data "made known to the expert at or before the hearing" if those facts and data are "of a type reasonably relied upon by experts in the particular field." OCGA § 24-7-703. Indeed, experts commonly offer opinions in the form of answers to hypothetical questions posed by lawyers. If there is a problem with the source of Penn's information, again the solution is for Toyo Tire to raise that issue in the trial court through a motion to exclude Penn's testimony.

[5] Toyo Tire points to portions of Penn's deposition to argue that his opinions on the diminution of value were based solely on the proximity of Toyo Tire's facility to the Davises' property. Although some of Penn's statements (and some parts of the Court of Appeals majority opinion) might be read this way in isolation, Penn's testimony read in full indicates that he considered the Toyo Tire facility's proximity to the Davises' home not as the sole basis for his

13

The testimony from the Davises amply described the alleged nuisance and the specific interferences coming from it, so this is not a case where there is no evidence that the alleged nuisance has interfered with the plaintiffs' property. Compare Lore v. Suwanee Creek Homeowners Assn., Inc., 305 Ga. App. 165, 172 (699 SE2d 332) (2010) (holding that the defendants were entitled to summary judgment when the plaintiffs presented no evidence, expert or otherwise, that the alleged nuisance actually increased water runoff). The Davises also testified about the black dust coming across the road from the tire factory onto their property, and Penn factored that alleged trespass into his diminution of value calculations. In sum, although it might not convince a jury at trial, the combined testimony of Penn and the Davises suffices to defeat Toyo Tire's challenge to causation on motion for summary judgment. See Nguyen, 298 Ga. at 84 ("'[I]f a defendant . . . moves for summary judgment and points to the favorable testimony of a dozen winners of the Nobel Prize for Medicine . . . , but the plaintiff responds with the admissible testimony of a barely qualified medical expert . . . , the trial court must assume – as unlikely as it may

conclusions, but as important in his valuation of the property because the location relates to the ways in which the property is affected by the bothersome side effects of the facility's operations.

14

be – that the jury will believe the plaintiff's expert and disbelieve the expert array offered by the defendant.'" (citation omitted)). Accordingly, the Court of Appeals did not err in affirming the trial court's denial of Toyo Tire's summary judgment motion on this issue.[6]

3.     We turn now to the second question presented – whether allowing the Davises to seek to recover both for their discomfort and annoyance caused by the alleged nuisance and for the diminution in their property value would permit a double recovery.[7]  OCGA § 41-1-4 says, "[a] private nuisance may

---

[6] Toyo Tire and its amici from the business community warn that our affirming the Court of Appeals will result in many more nuisance cases surviving summary judgment. We do not know if that would be bad or good; it would depend on the facts of those cases. We do know that if a defendant believes that the methodology of the plaintiff's expert is so unreliable that the plaintiff should not even be allowed to present the expert's testimony as evidence, the solution is to move to exclude the expert testimony under OCGA § 24-7-702. If, on the other hand, the defendant would prefer to exploit the expert's apparent weaknesses in front of the jury at trial, the defendant may choose not to file such a pretrial challenge. That strategy, however, will usually preclude the defendant from arguing that the court should ignore the expert's testimony in deciding a motion for summary judgment.

[7] Given the Davises' clear deposition testimony about the discomfort and annoyance they have suffered and this Court's clear holding that the determination of such damages does not require expert calculations but is committed to "the enlightened conscience of the jury," Columbus v. Myszka, 246 Ga. 571, 573 (272 SE2d 302) (1980), Toyo Tire does not contend that the Davises cannot prove these damages. We note that if Toyo Tire prevailed on its first argument – if the Davises could not get diminution of value damages  – then Toyo Tire would have no basis for arguing that there is a potential for double recovery and the second issue presented would be moot. Because we have rejected Toyo Tire's first argument and concluded that, based on the evidence currently in the record, the jury could find that the Davises have established causation of their diminished property value, we will proceed to decide the second issue.

15

injure either a person or property, or both, and for that injury a right of action accrues to the person who is injured or whose property is damaged." Georgia courts have made it clear in nuisance and trespass cases, however, that a plaintiff cannot recover twice for the same injury. See, e.g., Georgia Northeastern R. Co. v. Lusk, 277 Ga. 245, 246 (587 SE2d 643) (2003) (explaining that the plaintiff property owner could not recover for both the cost of restoring the stability of the riverbank and the diminution of value caused by the destabilized condition of the riverbank); Swift v. Broyles, 115 Ga. 885, 890 (42 SE 277) (1902) (holding that the plaintiff could not recover both for "the diminution of rental value of the premises during a time when they were occupied by plaintiff himself" and for "the physical discomforts and pain of plaintiff and his family during the same period").

In Stanfield v. Waste Management of Georgia, Inc., 287 Ga. App. 810 (652 SE2d 815) (2007), the Court of Appeals cited these two double recovery cases and declared: "The law is . . . clear that a plaintiff [in a nuisance action] may not recover for both discomfort and diminution of value." Id. at 812. In this case, citing City of Atlanta v. Hofrichter/Stiakakis, 291 Ga. App. 883, 890 (652 SE2d 815) (2008), the Court of Appeals declared just the opposite: "It is

16

well settled . . . that a plaintiff in an action for nuisance may recover for both damage to person and damage to property." Toyo Tire, 333 Ga. App. at 219. Toyo Tire had cited and discussed Stanfield in its briefs, and the Court of Appeals should not have ignored this seemingly contradictory precedent.

Nevertheless, as we will explain, Stanfield was a mistaken step off a long and firm path of Georgia law, and we disapprove it. Recovery for both past discomfort and annoyance and diminished property value has been consistently allowed by this Court and by the Court of Appeals in many cases for more than a century. See, e.g., Swift, 115 Ga. at 887 (explaining that the plaintiff could recover for all permanent injuries to his estate and for past discomfort and annoyance caused by the nuisance); Columbus v. Myszka, 246 Ga. 571, 573 (272 SE2d 302) (1980) (explaining that a nuisance plaintiff is not "limited to recovery of property damages alone" but rather "[u]nlawful interference with the right of the owner to enjoy possession of his property may be an element of damages"); Oglethorpe Power Corp. v. Estate of Forrister, 332 Ga. App. 693, 706-711 (774 SE2d 755) (2015) (explaining that discomfort and annoyance damages to an occupant are an element of nuisance damages distinct from damages to property interests); Weller v. Blake, 315 Ga. App. 214, 216-217

17

(726 SE2d 698) (2012) ("Damages for discomfort and annoyance are separate and distinct damages from any damage to realty.").[8]

Stanfield failed to apprehend the crucial distinction between double recovery cases like Lusk and cases like this one. In the Lusk line of cases, both recoveries compensate the plaintiffs for essentially the same injury. In Lusk, for example, the money damages awarded to stabilize the riverbank would also reverse the diminution in property value due to that destabilization. See 277 Ga. at 246-247. Any loss in value the property suffered because of its unstable riverbank would be eliminated when the riverbank was made stable again. In this way, the unstable riverbank and the resulting loss in property value were really one injury, which should be addressed by one recovery. Similarly, in Swift, this Court explained that because the diminution in a property's rental value is a way to measure "the discomforts to which its use has been subjected" during that period, recovery for both would be double recovery for past

_____

[8] In addition, the occupant of the land may also recover for physical personal injury and for personal property damage suffered due to the nuisance. See, e.g., Swift, 115 Ga. at 887-888 (upholding recovery for the destruction of the plaintiff's trees and for sickness in his family caused by the nuisance); Sam Finley, Inc. v. Russell, 75 Ga. App. 112, 118 (42 SE2d 452) (1947) (upholding recovery for "any physical and mental pain [the plaintiff] may have suffered as a result of his inhalation of the oily and smoky dust"); Towaliga Falls Power Co. v. Sims, 6 Ga. App. 749, 761 (65 SE 844) (1909) (upholding recovery for personal illness and lost crops).

damages. 115 Ga. at 888, 890. See also Towaliga Falls Power Co. v. Sims, 6 Ga. App. 749, 761 (65 SE 844) (1909) (explaining that the plaintiff could not recover damages both for the time he was prevented from working on his crop harvest due to nuisance-related illness and for the amount he had to pay replacement workers).

By contrast, the alleged discomfort and annoyance experienced by the Davises and the alleged diminution in their property's fair market value are two separate injuries that cannot be fixed by one recovery. Recovery for their discomfort and annoyance is designed to compensate them for what they have already experienced as residents of the property due to the Toyo Tire factory. Unlike the compensation that fixes the unstable riverbank once and for all, compensation for past discomfort and annoyance will not eliminate the discomfort and annoyance that will be experienced by future residents of the Davises' property. That future discomfort and annoyance is reflected in the diminished fair market value of the property. This ongoing diminution in property value is therefore a second injury, which should be separately compensated (assuming it is proved at trial).

The distinction between these injuries may be more easily grasped where

19

non-owner residents of the property suffer the discomfort and annoyance caused by a nuisance, and non-resident owners suffer the diminution in the value of their property. Both groups have been injured, and both can seek recovery under a theory of nuisance; when, as here, the residents and owners are the same, they can recover for both kinds of injuries. See Swift, 115 Ga. at 887 ("[T]he plaintiff, as owner of the premises described in his petition, was entitled to recover damages for all permanent injuries done to his freehold estate; and, as he occupied the premises himself, he also had a right to demand just compensation for such injuries as temporarily deprived him of the unrestricted use and full enjoyment of the same."); Forrister, 332 Ga. App. at 706-711. See also Restatement (Second) of Torts § 929 (1) (c) comment (1979) ("Discomfort and annoyance to an occupant of the land and to the members of the household are distinct grounds of compensation for which in ordinary cases the person in possession is allowed to recover in addition to the harm to his proprietary interests. . . . The owner of land who is not an occupant is not entitled to recover for these harms except as they may have affected the rental value of his land.").

The distinction between the two kinds of damages is also clear in the

20

timing of the harms each is meant to address. "[T]he Davises' allegations relate to invasions that are enduring in character and not readily alterable," so they can (and did) elect to seek recovery for past and prospective damages in this action. See Toyo Tire, 333 Ga. App. at 214. See also Cox v. Cambridge Square Towne Houses, Inc., 239 Ga. 127, 128 (236 SE2d 73) (1977) ("Since it clearly appears that this situation 'will continue indefinitely,' the [plaintiff] has the right to elect to treat the nuisance as temporary and sue for all those damages which have occurred within the past four years, or he may elect to sue for all future damages as well and put an end to the matter." (citation omitted)).[9]

The discomfort and annoyance damages would compensate the Davises for the interference with the use and enjoyment of their property that they have allegedly endured while living on the property. See Restatement (Second) of

---

[9] Although referring to the "permanence" of Toyo Tire's invasions, the Court of Appeals actually treated the alleged nuisance as "continuing" rather than "permanent," which is consistent with the Davises' claims and the trial court's order. This means that the Davises can elect (but are not required) to recover for future damages in this case and their claims are not time-barred by the statute of limitation found in OCGA § 9-3-30 (a) "except as to damages for past invasions occurring more than four years before they filed their complaint." Toyo Tire, 333 Ga. App. at 214-215. See also Oglethorpe Power Corp. v. Forrister, 289 Ga. 331, 333 (711 SE2d 641) (2011) (discussing the difference between "continuing" and "permanent" nuisances). Although Toyo Tire disagrees with this conclusion, we did not grant its petition for certiorari to address this issue, and it has not been briefed. We therefore express no opinion on this point and simply accept the Court of Appeals' characterization of the Davises' claim as one for continuing nuisance.

21

Torts § 929 (1) (c) (1979) (explaining that damages for harm to land resulting from a past invasion include "discomfort and annoyance to [the plaintiff] as an occupant").  See also Raymar, Inc. v. Peachtree Golf Club, Inc., 161 Ga. App. 336, 337 (287 SE2d 768) (1982); Towaliga Falls, 6 Ga. App. at 760 ("If the property is in the possession of a tenant, and the nuisance is of such a temporary nature as not to be likely to affect the premises after the expiration of the lease, the whole loss is to the tenant's leasehold interest, and not also to the landlord's reversion.").  The prospective damages available to the Davises as owners, on the other hand, are measured not through speculation about how much discomfort and annoyance they (or other occupants) may suffer in the future, but rather by how much the market value of their property has diminished based on the expectation of such continued discomfort and annoyance.  See Restatement (Second) of Torts § 930 (3) (explaining that the prospective damages for continuing invasions include "either the decrease in the value of the land caused by the prospect of the continuance of the invasion . . . or the reasonable cost to the plaintiff of avoiding future invasions").  See also Cook v. Rockwell Intl Corp., 358 FSupp.2d 1003, 1010 (D. Colo. 2004) (describing the prospective damages contemplated by this Court's decision in Cox as the decrease in the

22

value of the property caused by the ongoing nuisance or trespass).

For these reasons, we adhere to the long line of Georgia precedent holding that recovery for both the backward-looking personal injury to the occupant and the forward-looking injury to the owner's property value is available in a continuing nuisance case; we expressly overrule Stanfield; and we affirm the Court of Appeals' holding that the Davises can potentially recover for their past discomfort and annoyance as well as the diminution in their property value.[10]

Judgment affirmed. All the Justices concur.

---

[10] We do not, however, endorse the Court of Appeals' alternative holding that Toyo Tire's attempt to limit the kinds of damages for which the Davises can recover is premature. Courts frequently grant partial summary judgment on the issue of whether a plaintiff can recover a certain kind of damages. See, e.g., J. Smith Lanier & Co. v. Southeastern Forge, Inc., 280 Ga. 508, 509 (630 SE2d 404) (2006) (affirming grant of partial summary judgment on the issue of damages); Driskell v. Empire Fire & Marine Ins. Co., 249 Ga. App. 56, 62 (547 SE2d 360) (2001) (holding that the defendant was "entitled to partial summary judgment on the issue of recoverable damages").