**FIFTH DIVISION
MCFADDEN, P. J.,
GOBEIL and PINSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**May 25, 2022**

# In the Court of Appeals of Georgia

A22A0338. CITY OF SUWANEE v. PADGETT et al.

McFADDEN, Presiding Judge.

After we granted its application for interlocutory appeal, the city of Suwanee filed this appeal from an order denying its motion for summary judgment in Linda and Jerry Padgett's action for personal injury and loss of consortium. The city argues that the Padgetts' ante litem notice did not comply with OCGA § 36-33-5 because the amount of damages demanded in the notice exceeded the city's insurance policy limits. Nothing in the ante litem statute, however, requires the amount of damages demanded in an ante litem notice to be an amount within a municipality's policy limits. The city alternatively argues that there is no genuine issue as to any material fact on the questions of whether it had notice of the sidewalk defect that caused Linda Padgett's fall; whether it negligently constructed or maintained the sidewalk; or

whether Linda Padgett exercised ordinary care for her own safety. But the Padgetts point to evidence that creates jury questions on these material facts. So we affirm the trial court.

1. *Facts*.

> Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. We review the grant or denial of a motion for summary judgment de novo, and we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

*City of St. Marys v. Reed*, 346 Ga. App. 508, 508-509 (816 SE2d 471) (2018) (citation omitted).

So viewed, the record shows that Linda Padgett was walking on a city sidewalk. The sidewalk had "heaved," meaning that one slab of the sidewalk had become displaced and was higher than an adjacent slab. Padgett tripped on the displaced section and fell. At the time she fell, Padgett was looking at traffic to determine when she could cross a driveway that intersected the sidewalk. The city had no record of any prior complaints about the sidewalk.

2

The Padgetts' ante litem notice stated that they sought $2 million for Linda Padgett's personal injuries and $250,000 for Jerry Padgett's loss of consortium. At the applicable time, the city's insurance policy limits were $1 million per occurrence.

2. *Ante litem notice*.

The city argues that because the Padgetts' demand in their ante litem notice exceeded the city's policy limits, the ante litem notice did not comply with OCGA § 36-33-5. Noting that the statute provides that the plaintiff's demand in an ante litem notice "constitute[s] an offer of compromise," OCGA § 36-33-5 (e), the city relies on case law to argue that to comply with the statute, the offer of compromise must be one that the city is capable of accepting. But there is no such condition contained in the statute and we will not impose one.

OCGA § 36-33-5 requires a person who has a claim for damages against a municipality to "present the claim in writing to the governing authority of the municipal corporation for adjustment, stating the time, place, and extent of the injury, as nearly as practicable, and the negligence which caused the injury." OCGA § 36-33-5 (b). The statute further requires that "[t]he description of the extent of the injury . . . include the specific amount of monetary damages being sought from the municipal

corporation." OCGA § 36-33-5 (e). Under the statute, that amount "constitute[s] an offer of compromise." Id.

The statute itself does not require that "the specific amount of monetary damages being sought" be within the municipality's insurance policy limits or even be an amount the municipality is capable of accepting. So the city relies on language in several of our cases, including *Pickens v. City of Waco*, 352 Ga. App. 37 (833 SE2d 713) (2019), to argue that to comply with the ante litem statute, the "specific amount" of damages demanded in the "offer of compromise" must be an amount the city is capable of accepting.

In *Pickens*, we wrote that "notice does not substantially comply with [OCGA § 36-33-5] (e) *unless a specific amount is given that would constitute an offer that could be accepted by the municipality*." Id. at 43 (1) (quoting *Harrell v. City of Griffin*, 346 Ga. App. 635, 638 (1) (816 SE2d 738) (2018)) (emphasis in original). The city argues that the Padgetts' demand did not "constitute an offer that could be accepted by the municipality" because of its policy limits and the law that sovereign immunity is waived only to the extent of liability coverage purchased.

We agree with the Padgetts that when our ante litem cases refer to an "offer that could be accepted by the municipality," see *Pickens*, 352 Ga. App. at 43 (1);

4

*Harrell*, 346 Ga. App. at 638 (1), they simply mean an offer sufficiently definite that acceptance would "creat[e] a binding settlement" agreement. *Harrell*, 346 Ga. App. at 638 (1). We must read those cases in conjunction with the statute. And nothing in the statute requires a plaintiff's demand to be an amount the municipality is capable of accepting. As the Padgetts observe, claimants may not know a municipality's insurance limits before sending ante litem notice. And although the city argues that insurance limits are readily obtainable under Georgia's Open Records Act, OCGA § 50-18-70 et seq., nothing in the statute requires a claimant to determine those limits before sending ante litem notice. To read the statute in the way the city proposes would be to impose a requirement that a claimant seek out that information, which clearly is beyond the bounds of the statutory language.

We will not read into the statute language that the General Assembly did not include. We must presume that the General Assembly "meant what it said and said what it meant." *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (citation and punctuation omitted).

The trial court did not err in denying the city's motion for summary judgment on this ground.

3. *Whether the city is liable under OCGA § 32-4-93 (a) is a jury question.*

5

The city argues that it is entitled to summary judgment because the Padgetts point to no evidence that it negligently constructed or maintained the sidewalk or had constructive notice of the defect that the Padgetts allege caused the fall. We hold that these are issues for the factfinder.

Under OCGA § 32-4-93 (a),

[a] municipality is relieved of any and all liability resulting from or occasioned by defects in the public roads of its municipal street system when it has not been negligent in constructing or maintaining the same or when it has no actual notice thereof or when such defect has not existed for a sufficient length of time for notice thereof to be inferred.

"This Code section also applies to sidewalks." *Clark v. City of Atlanta*, 322 Ga. App. 151, 153 (744 SE2d 122) (2013).

(a) *Negligent construction and maintenance*.

The city argues that, under the statute, it is relieved of liability because the Padgetts have not introduced any evidence that it was negligent in constructing or maintaining the sidewalk. We hold that the Padgetts introduced evidence sufficient to create a question for the factfinder on this issue.

The Padgetts presented the testimony of an arborist that the landscaping around the sidewalk, specifically, the roots from a Bur oak tree planted eight feet from the

6

sidewalk, caused the sidewalk to heave. The arborist testified that a Bur oak should never have been planted eight feet from the sidewalk and that it was inevitable that the oak would cause heaving, given its proximity to the sidewalk.

The city argues that this testimony should be disregarded because it is speculative as the arborist did not visit the sidewalk until more than two and one-half years after Linda Padgett's fall; none of the photographs he reviewed showed oak tree roots displacing the sidewalk; and there was no apparent tree rot or decay.

> Even if the expert's opinion was based upon inadequate knowledge, this does not mandate the exclusion of the opinion but, rather, presents a jury question as to the weight which should be assigned the opinion. If it be developed that the opinion is based on inadequate knowledge, this goes to the credibility of the witness rather than to the admissibility of the evidence. The weight given to expert testimony in negligence cases is for the trier of fact who can, but is not required to give it controlling influence.

*Toyo Tire North America Mfg. v. Davis*, 333 Ga. App. 211, 217 (2) (775 SE2d 796) (2015) (citation and punctuation omitted). Given the arborist's testimony that he inspected the site and saw the roots growing under the heaving sidewalk, "his opinion on the [cause of the heaving] was not wholly speculative. Therefore, the [Padgetts],

7

as the nonmoving parties, presented sufficient evidence to defeat [the city's] motion for summary judgment[ ]" on the issue of negligent construction or maintenance. Id.

(b) *Constructive notice*.

The city argues that the Padgetts have pointed to no evidence creating a jury question on the issue of constructive notice. We disagree.

> [A] municipality is relieved of liability resulting from a defect in a public road or sidewalk when it has no actual notice thereof or when such defect has not existed for a sufficient length of time for notice thereof to be inferred. Implied or constructive notice of a defect may be shown in a variety of ways; for example, testimony as to how long the defect had existed prior to the accident, objective evidence that the defect had existed over time, or evidence that other persons had also fallen as a result of the same condition over a period of years. . . . The question of constructive notice ordinarily is for the jury, except in the absence of any evidence of constructive notice that could create a fact question, and in such an instance, the issue of negligence is a matter of law. Further, the length of time a defect must exist in order for an inference of notice to arise is ordinarily a jury question.

*City of St. Marys*, 346 Ga. App. at 509-510 (816 SE2d 471) (2018) (citations omitted).

To create a question on the issue of the city's constructive notice, the Padgetts introduced Google Street View photographs taken in June 2015 and in February 2017

8

that showed the defect in the sidewalk that allegedly caused Linda Padgett's April 2017 fall. The Padgetts point to testimony of city employees that they had no reason to doubt that the photographs accurately depicted the condition of the sidewalk in 2015 and 2017, and that the displacement depicted in the 2015 photograph would have warranted calling in a contractor to fix it.

"[O]bjective evidence that the defect had existed over time" can demonstrate constructive notice, and "the length of time a defect must exist in order for an inference of notice to arise is ordinarily a jury question." *City of St. Marys*, 346 Ga. App. at 509-510. "(E)ven slight evidence will be sufficient to satisfy the plaintiff's burden of production of some evidence on a motion for summary judgment. Here, when viewed in the light most favorable to [the Padgetts] as the nonmoving part[ies], such slight evidence exists." *Clark*, 322 Ga. App. at 153-154 (citations omitted) (Google Street View photographs showing sidewalk defect taken six and sixteen months before plaintiff's fall created a question of fact on the issue of city's constructive knowledge). Cf. *City of Brunswick v. Smith*, 350 Ga. App. 501, 504-505 (829 SE2d 781) (2019) (2014 Google Street View photograph of defect that allegedly caused plaintiff's 2015 crash did not create a question of fact on the issue of the city's

9

constructive knowledge of defect in the absence of other evidence, such as objective evidence that the defect had existed over time).

4. *Failure to exercise ordinary care*.

Finally, the city argues that it is entitled to summary judgment because Linda Padgett failed to exercise ordinary care for her own safety in that she was not looking at the sidewalk as she was walking. Whether Linda Padgett exercised ordinary care for her own safety is a question for the factfinder.

Linda Padgett testified that at the time she fell, she was watching traffic to determine when she could cross the driveway that intersected the sidewalk. "[A] pedestrian's possible confrontation with vehicular traffic could constitute a distraction" that is relevant in determining whether she exercised ordinary care for her own safety. *Hamilton v. Kentucky Fried Chicken of Valdosta*, 248 Ga. App. 245, 247 (2) (545 SE2d 375) (2001). "[T]he extent to which [Linda Padgett's] conduct contributed to [her] fall, if at all, is certainly not plain, palpable, and undisputable, rendering this issue inappropriate for summary adjudication." *Baker v. Harcon, Inc.*, 303 Ga. App. 749, 754 (a) (ii) (694 SE2d 673) (2010) (punctuation omitted). The trial court did not err in denying summary judgment on this ground.

*Judgment affirmed. Gobeil and Pinson, JJ., concur*.

10